Filed 6/10/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re JONATHAN P., a Person Coming Under the Juvenile Court Law. | B249605 |
| | (Los Angeles County |
| | Super. Ct. No. CK70262) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| JUAN P., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Philip L. Soto, Judge. Reversed and remanded.

Lori Fields, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Kim Nemoy, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Appellant Juan P., ("Father") the father of minor Jonathan P., appeals from an order of the juvenile dependency court denying Father's Welfare and Institutions Code section 388,[1] petition seeking custody of Jonathan P., or in the alternative, family reunification services. Before this court, Father argues that the court erred in failing to assess his request for custody pursuant to section 361.2. Father claims that although he was not present at the disposition hearing, he is a non-offending, noncustodial parent and thus he was entitled to have the minor placed with him unless the Department of Children and Family Services (the "Department") proved that placement with Father would be detrimental to Jonathan P. Father complains that rather than applying the detriment standard under section 361.2, the court erroneously applied the section 388 best interest standard to his request. In any event, Father asserts that he was entitled to reunification services. As we shall explain, any harm resulting from the failure to apply section 361.2 to Father's request for custody did not result in prejudice. At the time the court considered Father's custody request, Jonathan P. had left his placement and his whereabouts was unknown. As a result, the court could not make any accurate determination of detriment because Jonathan P.'s condition was not known. This notwithstanding, we conclude that the court erred in denying Father reunification services. The whereabouts of the Jonathan P. did not determine Father's legal entitlement to reunification services. The court should have required to Department to evaluate whether there were any available services that could be provided to Father notwithstanding Jonathan P.'s absence from the proceedings. The court's failure to require that assessment requires reversal of the court's order denying the section 388 petition. Accordingly, this matter is remanded for further proceedings.

---

[1] All further code references, unless indicated otherwise, are to the Welfare and Institutions Code.

2

*FACTUAL AND PROCEDURAL BACKGROUND*

Jonathan P. became the subject of dependency proceedings in mid-August 2012, when it was reported that Jonathan P.'s mother, Maria P. ("Mother") and her companion, Victor C. had engaged in acts of domestic violence in front of Jonathan P. and his toddler half-sister Destiny C.[2]  The Department filed a petition pursuant to section 300, subdivisions (a) and (b) with respect to Jonathan, then 15 years old, and Destiny C.[3]  The petition alleged that Victor C. "repeatedly struck the mother's face" with his fists on February 11, 2012, causing her to be injured, and resulting in his arrest.  It was further alleged that Mother had engaged in a violent altercation and slapped another male companion, and the children were at risk of physical harm and danger as a result of the domestic violence between Mother and her male companions.[4]

---

[2]    Mother and Victor C. are Destiny C.'s parents.  Destiny C., Mother, and Victor C. are not parties to this appeal.  The Department had been involved with Mother on prior occasions; Mother and four of her other children were the subjects of another dependency proceeding.  Mother failed to reunify with her four other children and they are in permanent placements.

[3]    The second to the last lines of counts a-1 and b-1 contains a typographical error in that they state Father, not Victor, was arrested on February 11, 2012 for spousal abuse.  The record reflects, however, that it was Victor who was arrested on February 11, 2012 for spousal abuse.  It is undisputed that Father is a non-offending parent and is not the subject of the allegations in the dependency petition.

[4]    In June 2011 after Destiny C.'s birth, Mother agreed with the Department to engage in voluntary family maintenance services based on her history of substance abuse and domestic violence, as well as her inability to reunify with her other children.  Thereafter, Victor C. battered Mother.  However, Mother failed to obtain a permanent restraining order against Victor C. and instead permitted Victor to have unmonitored contact with Destiny C.  In June 2012, the Department investigated additional referrals concerning Mother's drinking, suspected drug use and her continued contact with Victor C.  In August 2012, Mother had been involved in a number of additional domestic violence incidents with Victor C., another male companion and as well as her roommate.  It was also reported Mother used drugs, and failed to properly care for Destiny C.  After investigating Mother's circumstances, the Department concluded Mother was no longer in compliance with the voluntary services contract, and court intervention was necessary to protect both Jonathan P. and Destiny C.

None of the children's parents were present at the detention hearing on August 15, 2012. The whereabouts of the children and Mother were unknown at that time. The detention report indicated that Father had been deported to Mexico in 2011 and that his whereabouts was unknown. The court issued protective custody warrants for the children, along with an arrest warrant for Mother. The court entered detention orders for Jonathan P. with respect to both Mother and Father.

On September 12, 2012, a pre-trial resolution conference was conducted. By September, Mother and the children had been located, and Jonathan P. was present during the proceedings.[5] Jonathan P.'s counsel requested a continuance to investigate the case, and he reported a maternal grandmother might be available to care for the children. The court continued the matter for a contested adjudication, recalled the outstanding warrants for Mother and the children, and ordered a supplemental report from the Department about potential relative placement. Father's whereabouts remained unknown; the court found notice to Father was proper based on a due diligence search.

Mother informed the Department that from the mid-2000s until 2011, Jonathan P. had been residing with Father under the terms of a family law custody order. The order provided joint legal custody to Mother and Father parents, with primary physical custody to Father. Under the terms of the custody agreement, Mother was entitled to have custody of Jonathan P. from Monday through Friday during Jonathan's summer vacation. In 2011, Father sent Jonathan P. to visit Mother during his summer break. During Jonathan P.'s visit with Mother, Father was deported and that as a result Jonathan P. had remained in Mother's care.

According to the jurisdiction/disposition report, the Department had been unable to locate Father. The Department's due diligence report reflected the social worker had discovered approximately 22 possible addresses for Father, and letters had been sent to all of them on September 4, 2012, the same day the due diligence report was signed. The

---

[5]     At the time of the hearing Jonathan P. was residing with one of Mother's friends.

Department recommended family reunification services for Mother and Victor, but none for Father.

### Jurisdiction/Disposition

The court conducted the adjudication and disposition hearing on October 9, 2012. None of the parents appeared at the hearing, and Father's whereabouts remained unknown. The court found the children to be described by section 300, subdivisions (a) and (b). The court declared the children dependents of the juvenile court and removed them from the custody of Mother and Victor C. for suitable placement. Family reunification services and visitation were ordered only for Mother and Victor C. No reunification services were ordered for Father because his whereabouts was unknown at the time. Jonathan P. could not be placed with maternal grandmother because her home had not been approved for his placement. Therefore, the court ordered the Department to continue to use its best efforts to place the children with any appropriate relative. The court scheduled a six-month review hearing for April 2013.

The Department's six-month status review report revealed that Jonathan P. had been in several placements since the inception of the dependency case, and had experienced problems following rules in his foster homes. In early February 2013, Jonathan P.'s foster parents gave the Department a seven-day notice to have him moved. In response, on February 11, 2013, the social worker conducted a Team Decision Meeting (TDM). During the meeting, the social worker asked Jonathan P. to provide relative information for his paternal relatives, including Father's contact information. Jonathan P. reported Father was then living in Chicago, and had previously been deported, but had returned illegally to the United States. Jonathan P. provided Father's telephone number. A safety plan was developed for Jonathan P.; the social worker agreed to contact Father, but did not immediately do so.

The six-month review report also indicated that Jonathan P. had left school and had been absent from his foster home for 24 hours without permission. Jonathan P. was removed from his foster care placement and Jonathan P. was placed into a group home on March 6.

Thereafter, on March 12, 2013, Jonathan's group home case manager notified the social worker that Jonathan P. had taken all of his belongings and left the group home with two male companions. Jonathan P. was subsequently involved in a car accident with five other minors. He was admitted to the hospital for treatment. His injuries required surgery on his pelvis. On March 16, 2013, Jonathan left the hospital on crutches while he was waiting to be discharged.[6]

On March 18, 2013, the social worker contacted Father for the first time. Father reported that on March 16, Jonathan P. had called Father from the hospital using a friend's cell phone. Jonathan P. told Father that he was doing well and his friends were visiting him at the hospital. Jonathan P. apparently told Father he was planning to leave the hospital because he did not want to return to the group home. Father told the social worker that he tried to dissuade Jonathan P. from leaving the hospital. Father said that he had not heard from Jonathan P. since then and told the social worker he would try to call the cell phone number of Jonathan's friend.

Father also provided the social worker with his background and history. He reported that he had been deported to Mexico over a year earlier, but returned to the U.S. illegally about three months later, and was residing in Chicago with his partner and their two young children. Father had kept in contact with Mother by telephone after his deportation. Mother told Father Jonathan P. was well. During this time, Jonathan also reported to Father he was doing well, and Father had no idea about what was transpiring in Mother's home or that Mother was involved in dependency proceedings with the children. Father told the social worker he was willing to return to California to care for Jonathan P. and he was concerned about his well-being. Although Father was concerned about traveling to California in light of his immigration status and work obligations, he told the social worker he would attend the hearing scheduled for a six-month review hearing on April 9.

---

[6]    It is unclear whether the Department learned that Jonathan had left the hospital on March 16 and 18, 2013.

In the report, the Department recommended that the court terminate family reunification services for Mother. No recommendation was made with respect to Father and Jonathan P., and no proposed case plan was provided.

On March 27, 2013, the Department notified the dependency court that Jonathan P.'s whereabouts was unknown and he had left his placement. The court issued a protective custody warrant, and ordered the Department to provide a full report about Jonathan's whereabouts during his "awol" period, once he was located.

**Six-Month Review Proceedings**

On April 9, 2013, the court conducted the six-month review hearing. Father appeared at the hearing. The court appointed Father legal counsel. Father filed a "Statement Regarding Parentage," reflecting he was married to Mother in 1995; he signed a voluntary declaration of paternity when Jonathan was born; and a court judgment of parentage had been entered in Orange County Superior Court (case No. 02FL001735). The dependency court declared Father the presumed father of Jonathan. Father orally requested that Jonathan P. be placed with him based on the prior custody arrangement.

The court initially indicated its intent to order reunification services for Father "since it was previously no services because of whereabouts unknown, and we know where he is now, I don't see grounds for not giving him services for reunification with Jonathan." The Department's lawyer responded that providing services to Father was only required "if he, basically, shows up or is found within those six months." In Department's counsel's opinion, the six-month time period had passed and therefore, Father would be required to file a section 388 petition to obtain services. The court instructed Father's attorney to file a section 388 petition. The court also told Father, "I can't give Jonathan back to you. He is not in our care anymore. He was in the hospital for an operation, and he left without anybody's permission. So if you don't know where he is, we don't know where he is. We are trying to find him." Mother requested that the proceedings be set for a contested hearing; the court scheduled a hearing on the matter for May 7, 2013.

7

## Section 388 Proceedings.

On April 19, 2013, Father filed a section 388 petition, requesting a change in the court's prior order of October 9, 2012 that he receive no reunification services. The petition further stated the Father "only recently received notice of the juvenile dependency case concerning his child" and he had previously been given primary physical custody of Jonathan by the Orange County Superior Court. Father's petition requested "care and custody of his child (upon the child being located as he is currently awol from placement) with family maintenance services and other appropriate services. Alternatively, family reunification services." Father alleged he and Jonathan had maintained telephone contact and had a strong parent-child bond; therefore, granting the request would be in Jonathan's best interests and ensure he was placed with a "stable parent" in a safe and nurturing home.

The Department prepared a report on Father's section 388 petition. The report indicated that Jonathan P.'s whereabouts remained unknown. Father met with the social worker after the hearing on April 9 and reported he did not know where Jonathan was located, but Jonathan called him periodically from private numbers. Father requested custody of Jonathan when he was located. Father stated he could care for Jonathan since he had never had a problem in the past with Jonathan listening to him. The report stated that Mother had informed the social worker she had no objection to Jonathan residing with Father.

On May 2, 2013, Father spoke again to the social worker. He again requested custody. Father reported he had sent Jonathan to visit Mother in the summer of 2011, and was deported shortly thereafter. Father denied being deported as a result of any criminal activity and reported he had never done anything bad in his life. His only failure was that he was undocumented, but he had a home in Chicago and wanted to care for Jonathan.

The report included further information about Father's contact with Jonathan P. on March 14, 2013 when Jonathan was in the hospital. Jonathan was upset and told the social worker that he did not want to return to foster care. The social worker told him she would "look into the possibility" of returning him to Father. Jonathan reported he would

8

like to return to Father's care, but he did not want to move to Chicago, and would rather stay in California. The social worker allowed Jonathan P. to use her cell phone to call Father. Father was "appropriate" during the call. The report also clarified that Father requested custody of Jonathan P. when the social worker called him again on March 18, 2013.[7] The social worker confirmed Jonathan had provided Father's phone number in mid-February, but no contact with Father occurred before mid-March, at which time Father express his desire to have Jonathan P. placed in his care.

The social worker noted: "It is unclear why neither mother nor child informed the father of child's detention from mother in August 2012 or why mother and child kept father's information from DCFS until mid February. It is clear, however, that upon father learning of his son's situation father immediately requested the child be released to his care. Father has demonstrated his commitment and desire to provide Jonathan with a stable home environment by maintaining contact with DCFS and attending the last court hearing on 4/09/13 even though it was a hardship for him to travel from Chicago to California."

The Department indicated that it had been "unable to live scan" Father in order to verify he had no criminal record, and the Department was unable to verify he had a safe and stable home. Attachments to the report, however, reflect the social worker performed a criminal records search on Father (based on his name) through the Division of Criminal Justice Information Service in Sacramento, and the results reflected Father had "no criminal record." The Department recommended that the court deny Father's section 388 petition but order an evaluation under the Interstate Compact on the Placement of

---

[7] The Department's records indicate that the March 18, 2013 phone call to Father by the social worker was the first official contact the Department made to Father about the proceedings. The March 14, 2013 phone call between Jonathan and Father was not logged into the Department service logs.

Children (ICPC) to assess his home so when Jonathan P. was found, a recommendation could be made to release him to Father.

On May 7, 2013, the court conducted the hearing on Father's section 388 petition, along with Mother's contested six-month review hearing, were conducted.[8] Father remained in Chicago; he was represented by his appointed counsel. The court advised Father's counsel it was inclined to "go along with the recommendation to deny the 388" and do the requested evaluation under the ICPC on Father's home in Chicago. The court stated, "I don't have Jonathan. I'm not in a position to hand Jonathan P. over to a non-offending father. And I can't make a best interest finding if I don't have him in custody so I can find best interest." Father's counsel argued the court could make an order that as soon as Jonathan P. was located he could be placed with Father because Father was non-offending, presumed, father and previously had custody of Jonathan under the terms of a family law order. The court stated it could either deny the 388 petition without prejudice and let Father refile it when Jonathan P. was located, or "just trail it until we find Jonathan." Father's counsel responded, "We could do that."

The Department's counsel argued that neither prong of the section 388 test had been met because in his view, Father was a "federal fugitive" who had entered the country illegally, and that was the "only change" in his circumstances. The Department's counsel further argued that no ICPC could be conducted, since that would "basically, be having the court perpetuate Father's violation of federal law being in this country by helping somebody who is currently in this country illegally with this I.C.P.C." He urged the court to "flat out deny this 388 as neither prong is met."

Jonathan P.'s attorney requested that the court "at least grant this father [family [reunification [services]," stating, "I don't think the court has power not to offer father

---

[8]    The Department presented a "last minute information" report to the court in which the Department changed its recommendation, and now urged the court to continue Mother's family reunification services.

10

FR at this point. He's a presumed father. He's non-offending. And he showed up within the initial six-month period. The reason . . . he was denied family reunification services to begin with was because he was whereabouts unknown. So I think the court must offer him FR. I think he is entitled under the law to FR, because he did show up during the six months, first initial six-month review period between the disposition and the .21(e)."

Department's counsel again objected on the basis that Father was in the country illegally and also claimed that Father did not show up within six months from the date of detention, which would have been February 15, 2013. Jonathan P.'s lawyer responded that Father's immigration status was irrelevant to the question of Father's entitlement to reunification services. He further argued that he was legally entitled to services irrespective of whether it is in the best interest of Jonathan P.

The court concluded, "I don't see that there's grounds for offering FR to a father who is non-offending. I don't see that there's grounds for trying to reunify somebody with a child that I have no custody over. [¶] The April 19th 388 of [Father] is denied without prejudice. When we find Jonathan, we'll talk about reunifying with [Father] if that's appropriate. [¶] I'm not going to order an I.C.P.C. on [Father] at this time."

The court then addressed the six-month review hearing under section 366.21, subdivision (e) for Jonathan and Destiny with respect to Mother, and continued family reunification services for her, based on the Department's revised recommendation.

Father filed a timely notice of appeal.[9]

---

[9] This court has taken judicial notice of the orders of the dependency court from hearings that have occurred in the dependency court during the pendency of this appeal. (See *In re Josiah Z.* (2005) 36 Cal.4th 664, 676 [concluding that post-judgment evidence in dependency proceedings may be considered by the appellate courts reviewing dependency court orders].) From these orders it appears that, at some point after the court denied Father's request for custody and/or reunification services in May 2013, Jonathan P. was located and placed with relatives. In late April 2014, the dependency court ordered the Department to initiate an expedited Interstate Compact of the Placement of Children ("ICPC") evaluation of Father's home in Illinois, which is currently in progress.

11

## *DISCUSSION*

Before this court Father argues that the dependency court committed a number of errors in denying his request for custody of Jonathan P. and his alternative request for reunification services. We address these matters in turn.

**A.     Father's Custody Request**

Father asserts that the court erred in failing to review his custody request under section 361.2, rather than section 388. Father complains that when he appeared for the first time at the six-month review hearing and requested custody of Jonathan P., the court should have considered that request under section 361.2 [custody request by noncustodial parent], and immediately placed Jonathan P. in his custody unless the Department proved by clear and convincing evidence that placement with Father would be detrimental to the safety, protection or physical or emotional well-being of Jonathan P.

Father claims that rather than apply section 361.2, the court erroneously required Father to file his request for custody pursuant to section 388. In addition, Father complains that in considering his subsequently filed 388 petition, the court erred in focusing solely on the "best interest" standard under section 388. Father contends that his use of a section 388 petition did not excuse the court from evaluating Father's custody request under the section 361.2. legal standard. He points out that no "detriment finding" has ever been made against him in this case to justify depriving him – a non-offending, presumed father – of custody of his child.

Preliminarily, the Department argues that Father forfeited his complaint that the court erred in failing to apply section 361.2 to his custody request. The Department highlights the fact that at the section 388 hearing, when the court suggested that it could deny the section 388 petition without prejudice (and Father could re-file it when Jonathan P. was located) or it could "trail" the matter until Jonathan was found, Father's counsel responded "We could do that." Thus, the Department argues that Father's counsel's response to the court warrants the application of the forfeiture rule.

We do not agree. Father's argument on appeal is that section 361.2 applied to his request for custody as a matter of law. Thus, the issue of whether section 361.2 applies

12

when a non-custodial, non-offending parent requests custody of a minor is, on this record, a legal question, which we exercise our discretion to address.  (See *In re Abram M.* (2013) 219 Cal.App.4th 452, 462 [finding father did not forfeit appellate review of whether the juvenile court failed to apply or comply with section 361.2 because the arguments raised by father were primarily issues of law].)

In addition, it appears that Father filed the section 388 petition because, following the Department counsel's suggestion, that was the only means through which the court indicated that it would consider the request for custody; Father did not file the petition based on any acknowledgement that section 388 actually governed the request for custody.  Finally, the comments of Father's counsel reflect that he was acquiescing to the court's suggestion as two different ways the court could resolve the section 388 petition in light of Jonathan's absence from the proceedings.  His comments do not reflect an agreement that section 361.2 was inapplicable to his request.  In fact, no one – not the parties nor the court – addressed the possible application of section 361.2 at any of the hearings.  In our view, Father's vague response cannot be fairly interpreted as forfeiting any error with respect to the court's failure to apply section 361.2.   We, thus, turn our attention to the application of section 361.2.

Section 361.2 establishes the procedures a court must follow for placing a dependent child following removal from the custodial parent pursuant to section 361.  (*In re Z.K* (2011) 201 Cal.App.4th 51, 70; *In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1820.)  When a juvenile dependency court orders removal of a minor under section 361, the court first must determine whether there is a parent who wants to assume custody who was not residing with the minor at the time the events that brought the minor within the provisions of section 300 occurred.  (§ 361.2, subd. (a).)  "If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child."  (§ 361.2, subd. (a).)  The juvenile court must make the detriment finding by clear and convincing evidence.  (*In re Isayah C.* (2004) 118 Cal.App.4th 684, 700.)  Subdivision (c) of section 361.2 requires the juvenile court to "make a finding

13

either in writing or on the record of the basis for its determination. . . ." (§ 361.2, subd. (c).)

This appeal presents the question of whether section 361.2 applies to a request for custody by a non-offending, non-custodial parent made *after* the dispositional phase of the dependency proceedings. More specifically we are asked to decide whether the Department has the burden under section 361.2 to prove that it would be detrimental to place the child with the non-custodial parent who appears for the first time within six months after the disposition hearing and requests custody of the minor.

On its face, the language of section 361.2, subdivision (a) implies that the "finding of detriment" standard (and the Department's attendant burden to prove detriment) *only* apply when the court initially orders removal from the custodial parent at the disposition hearing: "*When a court orders removal of a child pursuant to Section 361*, the court shall *first determine* whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. . . ." (§ 361.2, subd. (a).) In *In re Zacharia D.* (1993) 6 Cal.4th 435, the Supreme Court examined the language of section 361.2, subdivision (a), and concluded: "Nothing in this statute suggests that custody must be immediately awarded to a noncustodial parent regardless of when in the dependency process the parent comes forward. Rather, its language suggests that the statute is applicable only at the time the child is first removed from the custodial parent or guardian's home. Our interpretation is reinforced by the absence of a similar provision requiring return of the child to a noncustodial parent in the statutes governing the 6-, 12-, and 18-month review hearings." (*Id.* at p. 453;[10] see also *In re. Z.K.* (2011)

---

[10]    In *Zacharia D.* the biological father, Javan W., learned of the minor's existence (and the pending dependency proceedings) after the disposition hearing but well prior to the 12-month review hearing. Nonetheless, Javan W. waited until the 18-month status review hearing to come forward to establish paternity and request custody of the minor. When questioned about why he had suddenly appeared in the proceedings, Javan W., who had reunited with the mother shortly before the 18-month status review hearing, stated he was afraid that the mother was going to lose custody of the minor. (*In re*

14

201 Cal.App.4th 51, 70 ["Section 361.2 is designed to apply at the disposition phase of the dependency proceeding, when the court first elects to remove the child from the custody of the custodial parent."].)

This notwithstanding, a few courts have applied the "detriment" standard in section 361.2 to requests for custody made by a non-custodial parent *after* the disposition phase of the dependency proceedings. For example, Division Three of this court, in *In re Suhey* (2013) 221 Cal.App.4th 732, acknowledged *In re Zacharia D.* as articulating the general rule, but nonetheless concluded that at the six-month review hearing when the father first appeared in the proceedings the DCFS had the burden under section 361.2 to prove that placing the child in the custody of her non-custodial father would be detrimental. The appellate court grounded its decision on the DCFS's admission that it had failed to give adequate notice of the proceedings to the child's father. (*Id.* at p. 743.) Likewise in *In re Janee W.* (2006) 140 Cal.App.4th 1444, 1450, our colleagues in Division Eight of this district concluded that "[e]ven though section 361.2, by its terms, applies when the court first takes jurisdiction of a child, its procedures can be invoked at the six-month and 12-month review hearings as occurred here. (Cal. Rules of Court, rule 1460(c)(2)(h)."[11] Finally, in *In re Z.K.,* the court also recognized that section 361.2

---

*Zacharia D., supra,* 6 Cal.4th 435 439-442.) The Supreme Court reversed the judgment of the appellate court, concluding that the Court of Appeal had erred in holding that the minor should have immediately been placed with Javan W. under section 361.2. The Court determined that section 361.2 did not apply at that late stage in the proceedings. The *Zacharia D.* Court observed Javan W.'s paternity was not judicially determined until 20 months after the minor had been removed from the custody of his mother and another man, Lee D., who was named on the birth certificate as the father, had welcomed the minor into his home and had acknowledged the minor as his son, and thus was the minor's presumed father. (*Id.* at pp. 453-454.) In addition, the *Zacharia D.* Court noted that Javan W. did not contend that the Department had failed to ascertain his existence and give him notice of the dependency proceedings prior to the 18-month hearing. (*Ibid.*)

[11]     California Rules of Court, rule 1460(c)(2)(h), was subsequently renumbered as rule 5.710(b)(2). The California Rules of Court, rules 5.708(k) and 5.710(b)(2), which govern dependency review hearings, provide that if the court places the child with a noncustodial parent at the review hearing then the court must apply the "procedures" in

15

would not in the course of an ordinary dependency proceeding apply at a section 366.26 hearing, but concluded that the dependency court could not terminate the rights of a non-custodial parent without making a finding of detriment—that placing the child in the mother's custody would be detrimental to the child. (*In re Z.K., supra,* 201 Cal.App.4th at pp. 70-71.)

Father's case is distinct from the decisions in *Suhey*, *Janee W.* and *Z.K.* Unlike in *Suhey,* the Department did not concede that it failed to provide notice to Father of the dependency proceedings. Also, unlike the *Z.K.* decision, the dependency court here did not terminate his parental rights to Jonathan P. Finally, we note that in *Janee W.*, the legal issue was distinct from the matter before this court. In *Janee W.* the court was asked to decide the application of the *procedures* in section 361.2, subdivision (b) to a review hearing, not, as here, whether the detriment standard in section 361.2, subdivision (a) applied at a review hearing. Thus, Father's case is not factually similar to those published cases that represent exceptions to the general rule articulated in *Zacharia D.*, that section 361.2, subdivision (a) applies only when the child is first removed from the custodial parent's home.

This notwithstanding, this matter is also distinguishable from *Zacharia D.* Unlike the father in *Zacharia D.*, here, Father established his parentage during the family law

---

section 361.2. (See California Rules of Court, rule 5.710(b)(2) ["If the court has previously placed or at this hearing places the child with a noncustodial parent, the court must follow the procedures in rule 5.708(k) and section 361.2."]; California Rules of Court, rule 5.708(k) ["If at any review hearing the court places the child with a noncustodial parent, or if the court has previously made such a placement, the court may, after stating on the record or in writing the factual basis for the order: [¶] (1) Continue supervision and reunification services; [¶] (2) Order custody to the noncustodial parent, continue supervision, and order family maintenance services; or [¶] (3) Order custody to the noncustodial parent, terminate jurisdiction and direct that [custody order final judgment] be prepared and filed . . . ."].) Thus, although section 361.2 "procedures" may apply at a dependency review hearing subsequent to the disposition phase of the case, rules 5.708(k) and 5.710(b)(2) do not prescribe the legal standard that should be applied to the placement determination, that is, the threshold question of whether the court should place the child with the non-custodial parent.

case that preceded the dependency proceedings, had primary physical custody of Jonathan P. and resided with Jonathan P. for a number of years prior to the filing of the dependency petition. In addition, Father had contact with the Department and requested custody of Jonathan P. when he first learned of the proceedings within six months after the disposition hearing. Thereafter, Father appeared at the six-month review hearing and sought custody and requested services.

We acknowledge that section 361.2, subdivision (a) appears to have limited application beyond the disposition phase of the proceedings. Yet it is of great concern that a non-offending parent who has cooperated with the court and the Department throughout the proceedings, who immediately and repeatedly requested custody, who appeared in the proceedings as soon as he learned of them, and has been deprived of custody without any court ever finding that placement with him would be detrimental to the minor. Here, Father's only failing was that he did not appear (apparently through no fault of his own) earlier in the proceedings. Indeed, we are concerned about the adequacy of the Department's efforts to find Father and provide him with notice of the proceedings earlier in the case. The Department's due diligence declaration for the disposition proceedings, signed September 4, 2012, indicated that Father was mailed notice of the proceedings at a number addresses *on* September 4, 2014, and concluded that no response had been received *by* September 4, 2012. Furthermore, although Jonathan P. provided the social worker with contact information for Father on February 11, 2013, the Department did not make any effort to contact Father until mid-March 2013—after Jonathan P. had left his placement. The possibility that the Department's unsatisfactory efforts to locate Father and apprise him of the dependency case earlier in the proceedings resulted in Father's delayed appearance in the matter cannot be ignored.

Equally troubling is the Department trial counsel's repeated references to Father's immigration status during the proceedings in the dependency court. It is not clear on this record the degree to which the juvenile court was influenced by Department counsel's argument on this issue, or whether Father's legal status played any role in the court's decision-making process. The law is clear, however, that Father's citizenship status is

17

not a legally relevant consideration in these matters. (See § 361.2, subd. (e)(1) [providing that the parent's immigration status is not considered in determination of whether to place a child with a non-custodial parent under section 361.2, subdivision (a)].) It is also clear that the Department counsel's improper comments infected the proceedings, distracting the court and parties from the relevant matters at hand, namely, Father's request for custody and/or reunification services.

If Father had attended the disposition hearing and had Father requested custody at that time, he would have been entitled to it absent a showing by the Department of detriment to Jonathan P. A "nonoffending parent has a constitutionally protected interest in assuming physical custody, as well as a statutory right to do so, in the absence of clear and convincing evidence that the parent's choices will be 'detrimental to the safety, protection, or physical or emotional well-being of the child.'" (*In re Isayah C., supra,* 118 Cal.App.4th at p. 697.) Here, however, Father was required to demonstrate that placing Jonathan P. with him served Jonathan P.'s best interest. The "detriment standard" and the "best interest standard" are not legal equivalents. In general, under the "detriment standard," it is not the non-offending parent's burden to show that she is capable of caring for her child. Instead, the party who is opposing placement has the burden to show by clear and convincing evidence that the child will be harmed if the non-offending parent is given custody. In contrast, under the section 388 "best interest standard," the parent seeking to modify the placement order shoulders the burden to prove both a change in circumstances and that the modification would be in the best interest of the minor.

In view of the totality circumstances of this case, in our view the dependency court should not have required Father to prove his entitlement to custody pursuant to section 388. Instead, the court should have analyzed the request under section 361.2, subdivision (a).

In any event, although the dependency court in this case applied the wrong legal standard, we also conclude the error was harmless. Jonathan P. was absent from his placement in April and May 2013 and his whereabouts was unknown at the time. His

condition and his well-being could not be fully and properly assessed in his absence. In our view, neither an assessment of "best interest" or "detriment" can be made based solely on Father's circumstances. It was not possible to conduct an evaluation of whether it would be detrimental to Jonathan P. to place him with Father without Jonathan P.'s participation in the process. Thus, even had the court applied section 361.2, the court could not have resolved the issue of detriment and could not have placed Jonathan P. with Father at that time.

In view of the foregoing, the juvenile dependency court did not commit prejudicial error in denying Father's request for custody.[12]

### B.    Father's Request for Reunification Services

On appeal Father also argues that the dependency court erred in denying his alternative request for reunification services. He claims that he had a right to such services pursuant to statute. Father is correct.

Section 361.5 and its various subdivisions govern the provision of reunification services. As a general rule, the juvenile court must provide reunification services when it removes a child from parental custody. (§ 361.5, subd. (a).) However, there are exceptions namely, the circumstances described in section 361.5, subdivisions (b)(1) through (16). In this case, the juvenile court denied father reunification services under subdivision (b)(1) which provides that "reunification services need not be provided to a parent . . . when the court finds, by clear and convincing evidence . . . . [¶] [t]hat the whereabouts of the parent . . . is unknown."

If the juvenile court denies a parent reunification services under section 361.5, subdivisions (b)(2) through (16), the juvenile court is authorized under section 361.5, subdivision (f) to set a section 366.26 hearing. (§ 361.5, subd. (f).) However, if the sole basis of denial of services is the unknown whereabouts of the parent under section 361.5,

---

[12]    Nonetheless, as discussed elsewhere here, this matter will be remanded to the dependency court for further proceedings in connection with Father's request for reunification services. On remand, if Father again seeks custody of Jonathan P., the dependency court must consider any such request under the standards articulated in section 361.2, subdivision (a).

subdivision (b)(1), the juvenile court must set a six-month review hearing. (Cal. Rules of Court, rule 5.695(h)(9).) The underlying intent is to provide a parent whose whereabouts are initially unknown but who desires reunification an opportunity to reunify if the parent's whereabouts become known within a reasonable period. This intent is made apparent in section 361.5, subdivision (d) which provides: "If reunification services are not ordered pursuant to paragraph (1) of subdivision (b) and the whereabouts of a parent become known within six months of the out-of-home placement of the child,[13] the court shall order the social worker to provide family reunification services in accordance with this subdivision." (§ 361.5, subd. (d).)

If the whereabouts of the parent becomes known prior to the six-month review hearing and the parent requests services, the Department has a duty to seek a modification of the dispositional order. (Cal. Rules of Court, rule 5.695(h)(9) ["If the parent or guardian is located prior to the 6-month review and requests reunification services, the welfare department must seek a modification of the disposition orders."].)

Here in October 2012 when the disposition hearing was conducted, the court did not order family reunification services for Father because his whereabouts was unknown. Thereafter in February 2013, within the six-month period that required the court to offer Father reunification services under section 361.5, subdivision (d), Jonathan P. gave the Department's social worker contact information for Father in Chicago. The Department did not bring this information to the juvenile court's attention, and it appears the social worker did not contact Father at that time. Father was apparently not contacted until mid-March 2013. Once Father was contacted, he informed the social worker he wanted custody of Jonathan. The Department's contact with Father during the six-month period

---

13 The "six month" period in section 361.5, subdivision (d) commences when the minor is removed from the custodial parent and placed out of the custodial home. (§ 361.5, subd. (d).) Removal determinations and placement orders are made by the dependency court at the disposition phase of proceedings. (See *In re T.W.* (2013) 214 Cal.App.4th 1154, 1165 [recognizing that the period for reunification services under section 361.5 begins at the time of the disposition].)

after the disposition triggered Father's right to family reunification services under section 361.5, subdivision (d) as well as the Department's obligation to seek a modification of the prior order.

However, the matter was not brought to the dependency court's attention until the six-month review hearing on April 9, 2013, by which time Jonathan P. had left his placement. As a result, the court denied Father's request for services. The court stated its view that there were no services to offer to a non-offending parent who could not, for all practical purposes, be reunified with a missing minor over whom the court lacked jurisdiction. We disagree with the court's assessment.

Neither Jonathan P.'s absence from the proceedings or Father's status as "non-offending" necessarily disposes of this issue. This is not like the other cases cited by the Department in which the parents and children were absent from the court's jurisdiction at the time the court entered various dependency orders. Here the court had jurisdiction over Father and properly exercised section 300 jurisdiction over Jonathan P. early in the proceedings. Given Father's appearance and willingness to participate in services, at the very least, the court should have ordered the Department to evaluate whether there were any services that could be offered that were not dependent on the presence of Jonathan P. Granted, most of the typical reunification services available such as conjoint counseling or visitation would require the participation of the child. However, perhaps there were other services that would serve the Father in the interim; maybe there were services Father could have used to prepare himself and/or make his home ready to regain custody of Jonathan P. The court's failure to require such an assessment requires reversal of the order denying the section 388 petition insofar as Father's request for reunification services is concerned.

## *DISPOSITION*

The order denying the Father's request in the section 388 petition for reunification services is reversed and the matter is remanded to the dependency court for further proceedings. On remand the court is directed to determine, in light of the current conditions and living circumstances of the Father and Jonathan P., whether there are

21

family reunification services that are available and that can be provided to Father and Jonathan P., and to order those services as appropriate to facilitate reunification.


WOODS, Acting P. J.


**We concur:**



ZELON, J.



SEGAL, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.