Filed 2/1/22  In re Ezra K. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re EZRA K. et al., Persons Coming Under the Juvenile Court Law. | B311192 (Los Angeles County Super. Ct. Nos. DK16835A, 20LJJP00780A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. J.K., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Robin R. Kesler, Judge Pro Tempore.  Affirmed in part, reversed in part, and remanded with directions.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

On March 9, 2021, the juvenile court sustained a Welfare and Institutions Code section 300[1] dependency petition on behalf of Noel K. (Noel, born 2014) and a section 342 subsequent petition on behalf of Ezra K. (Ezra, born 2012).[2]  On appeal, defendant and appellant J.K. (father) challenges the dispositional orders that followed.

We affirm the dispositional order regarding Ezra.  We reverse the dispositional order removing Noel from father's custody and remand the matter for the juvenile court to hold a new hearing where, if father still requests custody, the court shall consider placing Noel with father under section 361.2, subdivision (a).

**BACKGROUND**

*April 2016 Dependency Petition*

In April 2016, the Los Angeles County Department of Children and Family Services (DCFS) filed a dependency petition

_____

[1]      All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]      We refer to Noel and Ezra, collectively, as minors.

2

under section 300 seeking the juvenile court's exercise of jurisdiction over minors. In pertinent part, the petition alleged that minors' mother, L.M. (mother),[3] left minors alone without adult supervision for three hours. Ezra has cerebral palsy and a seizure disorder and is immobile. Mother was inconsistent in providing medication to Ezra. Mother had been arrested for "Child Cruelty: Possible Injury/Death." Father was nonoffending.

Nearly a year later, in April 2017, the juvenile court declared minors dependents under section 300, subdivision (b)(1) (failure to protect). Minors were placed with father under DCFS supervision. Mother was granted unmonitored visitation. Father's court-ordered case plan required him to participate in parenting classes regarding special needs children.

*December 2017 Supplemental Petition*

Minors were detained from father in December 2017. Noel was placed with a caregiver, while Ezra was hospitalized. A few days later, DCFS filed a supplemental petition under section 387 alleging that father had failed to comply with the juvenile court's orders regarding minors' follow-up medical examinations and regional center and school enrollment for Ezra. Father had also failed to complete a special needs parenting class.

In January 2018, the juvenile court placed Noel on an extended visit with father. Ezra remained detained. Later that month, the court sustained the section 387 supplemental petition, placed Noel on an extended visit with both mother and father, and granted DCFS discretion to release both minors to one or both parents.

---

[3]     Mother is not a party to this appeal.

3

As for disposition, in May 2018, the juvenile court ordered minors released to home of parents and ordered DCFS to provide family maintenance services. Father's new case plan required him, inter alia, to complete parenting classes regarding special needs children, attend individual counseling to address case issues, and complete medical training regarding feeding pumps and G-tubes.

*October 2018 Supplemental Petition*

In October 2018, DCFS filed another section 387 supplemental petition on behalf of Ezra. For the s-1 count, the petition alleged that mother and father continued to medically neglect Ezra through their failure to keep his "scheduled appointments necessitated by the child's persistent weight loss resulting in the child's hospitalization . . . ." The s-2 count alleged that mother failed to regularly participate in her court-ordered individual counseling and mental health assessment. The s-3 count alleged that father failed to complete the court-ordered medical training regarding Ezra's feeding pump and G-tube.

On the same day, the juvenile court detained Ezra from both parents. Mother and father were granted unmonitored visits. A few weeks later, the court modified the visits "to monitored given . . . [DCFS's] concern with the family being a flight risk."

In February 2019, the juvenile court sustained the s-1 count (mother's failure to participate in counseling and mental health assessment) and s-2 count (parents' failure to keep Ezra's medical appointments), as alleged in the supplemental petition, and dismissed the s-3 count (father's failure to complete medical training).

4

For the disposition, in March 2019, the juvenile court removed Ezra from mother and father but ordered unmonitored visitation.

*Termination of Jurisdiction over Noel*

The juvenile court terminated jurisdiction over Noel in February 2019.  Mother and father were granted joint physical and legal custody of Noel, with mother having primary residence.

*December 2020 Removal Order*

By April 2020, Ezra had returned to mother's home.  But in early December 2020, the juvenile court granted DCFS's request for a removal order of minors from mother after minors were found, once again, unsupervised.  Ezra was hospitalized, and Noel was placed in foster care.

*December 2020 Dependency Petition and Subsequent Petition*

On December 8, 2020, DCFS filed another dependency petition on behalf of Noel.  The petition sought juvenile court jurisdiction under section 300, subdivision (b)(1), based on the allegation that, in November 2020, mother left minors unsupervised for over 90 minutes.  Noel was found naked, and Ezra was found only wearing a diaper.  Based on the same allegations, a section 342 subsequent petition was filed on behalf of Ezra.

*December 2020 Detention Report and Hearing*

According to the December 2020 detention report, father was living in Las Vegas.  When contacted by DCFS, father indicated that he understood the reason for minors' detention.

At the December 2020 detention hearing, the juvenile court found a prima facie case that minors were children described by section 300 and detained them from the parents.

5

*January 2021 Jurisdiction/Disposition Report*

According to the January 2021 jurisdiction/disposition report, Ezra continued to be hospitalized.

The dependency investigator had interviewed father telephonically.[4] Father stated that he was currently residing with his mother and was not working due to the COVID-19 pandemic. He advised that he was able and willing to take custody of Noel. He understood, however, that Ezra had not been returned to his care because he had not completed a special needs parenting class or individual counseling.

Mother believed that father was "a great father," but she did not think it would be in Noel's best interest to be placed with him. Because father lived in Las Vegas, mother would not have much contact with Noel if she lived with father.

DCFS categorized the family as being at very high risk of future abuse and/or neglect based on the "referral and case history, ongoing neglect issues in the home, and . . . Ezra having significant developmental delays[.]" Accordingly, DCFS recommended minors' continued detention from the parents. Regarding father, DCFS recommended that he comply with previous court orders, such as participating in a support group for parents with children with special medical needs and to learn about Ezra's medication needs. DCFS noted that although father was a nonoffending parent in the most recent petitions regarding leaving minors unsupervised, he had "played a minimal role in

---

[4] The jurisdiction/disposition report indicates that the interview was conducted on December 22, 2019. Based on the content and context of the interview, this date appears to be an error, and we assume that the interview took place, instead, on December 22, 2020.

6

the care of his children and ha[d] been living in Las Vegas while mother ha[d] been caring for the children full time."

*March 2021 Last Minute Information for the Court*

DCFS reported that Ezra had adjusted well to his caregiver's home and that his health had stabilized. There were, however, concerns regarding Noel's behavior. Noel's caretaker described severe tantrums when the child did not get her way. Noel would become "so angry that she w[ould] pull open her dresser drawer so hard" that it would almost fall on her. Noel spit on other children living in the home and broke their belongings as well as her own.

*Adjudication Hearing*

At the March 9, 2021, adjudication hearing, the juvenile court sustained the December 2020 section 300 petition as to Noel and the section 342 petition as to Ezra.

With respect to disposition, father's counsel first requested "a case plan narrowly-tailored to the case issues" and "a minimum amount of services, if at all." As for custody, father's counsel requested "release to either [father] or . . . mother."

The juvenile court declared minors dependents of the court. The court removed Ezra from mother. The court removed Noel from both parents' custody. Regarding Noel and father, the court found that it was "not in the child's best interests to be returned to [father], even though he's nonoffending under the [section] 300 petition[.]" The court noted that father "did not follow through with Ezra's needs and . . . had the child removed from him. While Noel doesn't have the same medical needs, she does have emotional needs, and it's not in her best interests that we place the child with her [*sic*] when father failed to follow up with other needs."

This timely appeal ensued.

**DISCUSSION**

I. *Custody of Noel*

Father argues that, because he was a noncustodial and nonoffending parent, the juvenile court erred by denying his request for placement of Noel without making a detriment finding, as required by section 361.2, subdivision (a). He further contends that, had the court made such a finding, it would not have been supported by substantial evidence.

A. Standard of review

"We normally review an order removing a child from parental custody for substantial evidence viewing the record in the light most favorable to the juvenile court's findings. [Citations.] When the issue on appeal involves the interpretation and proper application of the dependency statutes, however, our review is de novo." (*In re Anthony Q.* (2016) 5 Cal.App.5th 336, 344 (*Anthony Q.*).)

B. Relevant law

Section 361.2 provides, in relevant part, that if a juvenile court orders the removal of a child under section 361, it "shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of [s]ection 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).) The basis for the court's determination under section 361.2, subdivision (a), must be made "either in writing or on the record[.]" (§ 361.2, subd. (c).)

8

The juvenile court must "weigh[] all relevant factors to determine if the child will suffer net harm[,]" and any finding of detriment in this context must be made by clear and convincing evidence. (*In re A.C.* (2020) 54 Cal.App.5th 38, 43.)

C. Analysis

Noel was not residing with father when "the events or conditions arose that brought the child within the provisions of [s]ection 300" in November/December 2020.[5] Accordingly, "the [juvenile] court was required under section 361.2 to place [Noel] with father unless such placement would be 'detrimental to the safety, protection, or physical or emotional well-being of the child.'" (*In re Adam H.* (2019) 43 Cal.App.5th 27, 32 (*Adam H.*); see also *In re Abram L.* (2013) 219 Cal.App.4th 452, 455 (*Abram L.*).)

---

[5] While father might have had joint physical and legal custody of Noel, the record reflects that father had minimal, if any, contact with the child while father was living in Las Vegas. DCFS nevertheless contends that the record "does not clearly establish that . . . father was noncustodial." This argument misses the mark, as DCFS does not suggest that Noel was *residing* with father. ["[Father] had joint legal and physical custody of Noel but moved to Las Vegas, leaving . . . mother to care for both children by herself."])~ A parent who technically has physical and/or legal custody of a child may still be deemed noncustodial because the child does not live with the parent. (See *In re Dakota J.* (2015) 242 Cal.App.4th 619, 628 (*Dakota J.*) ["historically the term 'resides' has been commonly used and understood to mean ""to dwell permanently or for a considerable [amount of] time[]"""]; *Anthony Q., supra*, 5 Cal.App.5th at pp. 351–352.)

The juvenile court failed to make such an express finding of detriment as to Noel.[6]  Indeed, the court failed to make any reference to the requirements of section 361.2, subdivision (a), at the hearing or in its minute order.  Rather, the court found that it was "not in the child's *best interests* to be returned to [father], even though he's nonoffending under the [section] 300 petition[.]" (Italics added.)  But "[t]he 'finding of detriment standard' and the 'best interest standard' are not legal equivalents." (*In re Jonathan P.* (2014) 226 Cal.App.4th 1240, 1256 (*Jonathan P.*).)  We conclude that the court applied the wrong legal standard in adjudicating father's request for custody of Noel.  (See *Adam H.*, *supra*, 43 Cal.App.5th at p. 32; *Jonathan P.*, *supra*, 226 Cal.App.4th at p. 1256; *Abram L.*, *supra*, 219 Cal.App.4th at p. 461.)

---

[6]     To the extent that DCFS suggests that father forfeited this issue on appeal by "never request[ing] custody under section 361.2[,]" we disagree.  As noted in the January 2021 jurisdiction/disposition report, father told the dependency investigator that he was able and willing to take custody of Noel.  Moreover, at the adjudication hearing, father's counsel requested "release to either" parent.  These requests were sufficient to "trigger[] section 361.2, subdivision (a)'s mandate that 'the court *shall* place the child with the parent *unless* it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child.'"  (*In re D'Anthony D.* (2014) 230 Cal.App.4th 292, 298, fn. 2 (*D'Anthony D.*).)  Even if forfeiture could be found, because "[t]he arguments raised by father are primarily issues of law" (*Abram L.*, *supra*, 219 Cal.App.4th at p. 462), we would still exercise our discretion to address them (see *D'Anthony D.*, *supra*, 230 Cal.App.4th at p. 298, fn. 2).

"Although we have concluded the juvenile court erred in failing to make a [detriment] finding under section 361.2, subdivision (a), '[w]e cannot reverse the court's judgment unless its error was prejudicial, i.e., "'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'"'" (*Adam H., supra*, 43 Cal.App.5th at p. 32.)

The juvenile court's finding that it was not in Noel's best interest to be placed with father was based on father's failure to "follow through with *Ezra's* needs . . . ." (Italics added.) The court acknowledged that Noel did not "have the same medical needs" as Ezra, but that she did "have emotional needs." Given the wide chasm between the severity and nature of Ezra's lifelong, serious medical needs and Noel's more recent behavioral issues in foster care, we conclude that it is reasonably probable that father would have obtained a more favorable result had the juvenile court evaluated his request for custody of Noel under section 361.2, subdivision (a), and applied the detriment standard rather than the best interest standard. We can locate nothing in the record that would compel a finding, as a matter of law, that placement with father would be detrimental to Noel.[7] Our conclusion is bolstered by the overarching objective of the

---

[7] For the same reasons, "[t]his is not the clear-cut case in which we may imply" a finding of detriment. (*Adam H., supra*, 43 Cal.App.5th at p. 33; see also *Abram L., supra*, 219 Cal.App.4th at p. 463, fn. 5 ["Where the juvenile court fails to make express findings required by statute, . . . we imply such findings, if at all, 'only where the evidence is clear[]'"]; *In re J.S.* (2011) 196 Cal.App.4th 1069, 1078 ["the doctrine of implied findings may be given limited scope where an express finding is required"].)

dependency scheme to preserve the family unit.  (See *Dakota J.*, *supra*, 242 Cal.App.4th at pp. 628–629.)

"We do not suggest whether the record would or would not support a finding of detriment in this case. . . .  This is not our decision to make.  Given that the juvenile court did not expressly consider placement with father under section 361.2 and there was conflicting evidence as to whether such placement would be detrimental to [Noel], we believe the better practice is to remand the matter to the juvenile court to consider the facts within the appropriate statutory provision." (*Adam H.*, *supra*, 43 Cal.App.5th at p. 33.)

II.  *Custody of Ezra*

Unlike with Noel, the juvenile court never terminated its jurisdiction over Ezra arising from the initial April 2016 dependency petition.  In March 2019, the court removed Ezra from father and did not subsequently return him.

Relying on section 361 and *Dakota J.*, *supra*, 242 Cal.App.4th 619, father argues that because he did not have custody of Ezra, it was legal error for the juvenile court to order Ezra removed from him at the March 9, 2021, adjudication hearing.

We reject father's argument for the simple reason that the juvenile court *did not* remove Ezra from father's custody at the March 9, 2021, hearing.  Rather, the court removed Ezra from mother only; after all, it had already removed Ezra from father in March 2019.  The court stated: "Court will make findings *as to the mother and the kids* pursuant to . . . section 361[, subdivision] (c), and by clear and convincing evidence that [is] also included for Ezra, . . . that there's still a substantial risk to the children, if they were returned to the physical custody of the parents, [and]

12

no reasonable means today by which to protect them without removing them from their parents' care." (Italics added.) The minute order regarding Ezra unambiguously provides: "It is reasonable and necessary to remove the child from the **mother** . . . ."[8]

In his reply brief, father argues that the prior removal order did not preclude him from requesting custody of Ezra under section 361.2 and that, in denying that request, the juvenile court was required to make a detriment finding. Although father forfeited this argument by failing to raise it in his opening brief (*Telish v. State Personnel Bd.* (2015) 234 Cal.App.4th 1479, 1487, fn. 4 ["An appellant's failure to raise an argument in the opening brief waives the issue on appeal"]), for the sake of completeness, we will consider it on the merits.

Assuming, arguendo, that it was error for the juvenile court to fail to make a finding of detriment under section 361.2, subdivision (a), before denying father's request for custody of Ezra, we conclude that the error was not prejudicial and does not warrant reversal. (See *Adam H.*, *supra*, 43 Cal.App.5th at p. 32 [to reverse, failure to make detriment finding must be prejudicial].)

The juvenile court was justifiably concerned by father's previous failures to comply with orders related to learning to care for Ezra's serious medical needs. Ezra was repeatedly hospitalized during the pendency of this dependency matter, and there was a sustained count directly related to father's medical

---

[8] In contrast, the minute order regarding Noel, who was removed from both mother and father, states: "It is reasonable and necessary to remove the child from the **parents** . . . ."

13

neglect of Ezra through the failure to keep Ezra's medical appointments.

The gravity of the juvenile court's concerns about father's failures with respect to Ezra's medical needs is apparent given that the court found that such conduct threatened Noel's wellbeing—despite Noel not sharing Ezra's medical problems. This is a compelling indicator that it is not reasonably probable that father would have obtained a more favorable result had the juvenile court made an explicit detriment finding under section 361.2, subdivision (a), when denying father's request for custody of Ezra. Accordingly, we will not disturb the court's order. (*Adam H.*, *supra*, 43 Cal.App.5th at p. 32.)

## DISPOSITION

The March 9, 2021, dispositional order regarding Ezra is affirmed. We reverse the March 9, 2021, dispositional order removing Noel from father's custody and remand the matter for the juvenile court to hold a new hearing where, if father still requests custody, the court shall consider placing Noel with father under section 361.2, subdivision (a).

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
ASHMANN-GERST

We concur:


_____, P. J.        _____, J.
LUI                                      CHAVEZ


14