Filed 4/13/15  Miguel R. v. Super. Ct. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MIGUEL R., | B261251 |
| Petitioner, | (Super. Ct. No. CK47988) |
| v. | |
| THE SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES, | |
| Respondent. | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES et al., | |
| Real Parties in Interest. | |

Writ petition to review order setting hearing under Welfare and Institutions Code section 366.26.  Marguerite Downing, Judge.  Petition denied.

Law Office of Alex Iglesias, Steven Shenfeld and Jasminder Deol for Petitioner.

No appearance for Respondent.

Mark Saladino, County Counsel, Dawyn Harrison, Assistant County Counsel, Kimberly A. Roura, Deputy County Counsel for Real Party in Interest Los Angeles County Department of Children and Family Services.

Children's Center of Los Angeles (CLC 1), Ronnie Cheung and Rosa Figueroa-Versage for Real Parties in Interest Steven and Genesis.

_____

Petitioner Miguel R. seeks extraordinary relief (Welf. & Inst. Code, § 366.26, subd. (*l*);[1] Cal. Rules of Court, rule 8.452) from the juvenile court's order, made at the 18-month review hearing (§ 366.22), setting a hearing pursuant to section 366.26 to consider termination of parental rights and implementation of permanent plans for two of his four dependent children, 13-year-old Steven R. and 10-year-old Genesis R.  Miguel's petition is opposed by the Los Angeles County Department of Children and Family Services (Department) and by Steven and Genesis.  We deny the petition on the merits.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Family's Prior Involvement with the Dependency System*

Miguel and his family first became involved in the dependency system in 2002 when the juvenile court sustained a section 300 petition filed by the Department on behalf of Steven and his two older siblings, Brian R. (now 17 years old) and Joseph R. (now 16 years old),[2] alleging the children were at risk due to Maria's amphetamine abuse and Miguel's failure to protect them.  The children were initially released to Miguel, but they were later detained from Miguel's custody after he tested positive for amphetamine and methamphetamine.  In June 2003 the juvenile court terminated jurisdiction.

In October 2005 the Department filed a second section 300 petition after Maria tested positive for methamphetamine.  In January 2006 the juvenile court dismissed the petition, with the parents' consent, with an order that the Department provide informal supervision.  (§ 301.)  The following month, after Maria again tested positive for methamphetamine, the Department filed a third section 300 petition on behalf of Roberto, Brian, Joseph, Steven and Genesis.  On April 6, 2006 the juvenile court sustained the petition, finding the children were at risk due to Maria's history of drug abuse and current abuse of methamphetamine.  On June 1, 2006 the court sustained a count against Miguel, alleging he had a history of substance abuse rendering him incapable of providing regular

---

[1]     Statutory references are to this code.

[2]     The petition was also sustained as to Roberto P., the son of Maria D. from a prior relationship, who has reached adulthood.

2

care for the children. (§ 300, subd. (b).) On August 23, 2007 the court terminated jurisdiction with a home-of-parents order.

2. *The 2012 Dependency Petitions*

The Department received three referrals between January 2011 and May 2012, one alleging Maria hit Genesis, another reporting the smell of marijuana was emanating from the home, and the third alleging Maria was using methamphetamine and neglecting her children. In June 2012 the Department received yet another referral alleging Maria and her sister, who lived in the home, had engaged in a physical fight. When police arrived, the sister reported that Genesis had been sexually abused by a neighbor. Maria told the Department's social worker that Genesis had disclosed the abuse to Maria about a month earlier, but she did not believe anything inappropriate had taken place. During the interview Maria told the social worker that Miguel was living in Mexico and had no contact with her or their children.

On July 17, 2012 the Department filed a section 300 petition alleging Brian, Joseph, Steven and Genesis were at risk due to Maria's failure to protect Genesis from sexual abuse. The juvenile court detained the children from Miguel and released them to Maria.

In its jurisdiction and disposition report submitted August 2, 2012, the Department stated Maria told the social worker she had been married to Miguel since 1996, but he had left the family four or five years earlier and later moved to Mexico. Maria added that she had not heard from Miguel since he left and he had provided no financial support for the family. The Department's efforts to locate Miguel had been unsuccessful.

On September 25, 2012 the Department filed an amended section 300 petition adding allegations that Miguel had failed to provide the children with the necessities of life and his whereabouts were unknown. The Department recommended the court deny reunification services to Miguel.

In a supplemental report submitted October 9, 2012, the Department advised that it had received a letter from Miguel dated September 23, 2012. Miguel explained that he

3

was currently detained by immigration authorities in Arizona and had a hearing scheduled for October 17, 2012. Miguel added that he had separated from Maria on December 31, 2009 and had not contacted her or the children over the past several years.

On October 15, 2012 the juvenile court appointed counsel to represent Miguel. On October 18, 2012 the Department reported that Maria had been terminated from a substance abuse program for noncompliance. The Department filed a second amended section 300 petition, adding allegations that Maria had failed to provide the children with the necessities of life and that the children were at risk due to Maria's mental health issues. On October 23, 2012 the court ordered the four children detained from Maria. The Department promptly placed all four children together in a foster home.

In a progress report submitted December 18, 2012, the Department advised that the social worker had spoken by telephone with Miguel, who had been deported to Mexico. Miguel told the social worker he and Maria had separated because Maria became involved in another relationship. In May 2011 he left for Mexico to see his ailing mother and two adult children he had from an earlier relationship. Miguel added that he was initially deported in 2005 after he was convicted of trafficking marijuana in North Carolina and stated that his recent immigration problems were due to his attempt to re-enter the United States in July 2012, which resulted in his deportation and inability to return to the United States for 10 years. Miguel told the social worker he would like the Department and the juvenile court to do "whatever is in the best interest of the children for their happiness." The social worker provided Miguel with the telephone number of the children's foster home. In a further report the Department stated that Miguel had twice telephoned the foster home, but the family was not home. The Department also advised that it was in the process of translating its reports to the court into Spanish and would send them to Miguel in Mexico.

On January 14, 2013 the juvenile court dismissed the section 300 petition as to Brian and Joseph and returned them to Maria, sustained two counts in the petition

alleging Steven and Genesis were at risk due to Maria's conduct, and continued the jurisdiction hearing on the counts concerning Miguel.

On May 30, 2013 the juvenile court conducted the jurisdiction hearing as to Miguel and the disposition hearing for both parents. Miguel was represented by counsel at the hearing. The court dismissed the counts in the petition concerning Miguel, ordered Steven and Genesis removed from Maria, ordered reunification services for Maria, and denied reunification to Miguel "as he is noncustodial and not requesting custody." The court granted Miguel unmonitored visits with the children by telephone and internet video calls (Skype). On July 29, 2013 the court ordered the Department to follow up on visits between Steven and Genesis and their older siblings living with Maria.

3. *Maria's Relapse and the Possibility of the Children Moving to Mexico To Live with Miguel*

On November 5, 2013, after Maria relapsed into methamphetamine abuse, the Department filed a new section 300 petition as to Brian and Joseph. The court ordered the two children detained from Maria and set the jurisdiction hearing as to them and the six-month review hearing as to Steven and Genesis for December 13, 2013. In a report for the hearings the Department indicated Steven and Genesis were visiting consistently with mother and wished to return to her care. Miguel had not made contact with any of the children. On December 13, 2013 the court ordered the Department to ensure sibling visits and continued the various hearings to January 10, 2014.

In a further report for the jurisdiction hearing as to Brian and Joseph, the Department stated both children told the social worker they had not seen Miguel since he left for Mexico three or four years earlier and they last spoke to him in 2012; Miguel stopped calling them after that time. Brian told the social worker there was "no way" he would live with Miguel in Mexico because his educational goals and plans for the future were in the United States. Joseph stated he would not consider living with Miguel because he did not speak Spanish, was afraid of violence in Mexico, and wished to continue his education in the United States. Miguel told the social worker he would like

5

to have Brian and Joseph returned to his care in Mexico, but would "respect their wishes" if they did not want to live with him.

On January 10, 2014 the juvenile court conducted the six-month review hearing as to Steven and Genesis. (§ 366.21, subd. (e).) The court found Maria was not in compliance with her case plan, ordered the Department to offer Maria additional reunification services, and set the 12-month review hearing (§ 366.21, subd. (f)) for May 30, 2014. The court set the matter for mediation as to Brian and Joseph and continued the jurisdiction hearing to March 6, 2014.

In a report submitted on May 30, 2014 for the 12-month review hearing as to Steven and Genesis, the Department stated Maria had 10 visits with Steven and Genesis between January and May 2014, five sibling visits had taken place, and Miguel had not made contact with any of the children.

At the 12-month review hearing on May 30, 2014 the juvenile court found Maria was in compliance with her case plan and there was a substantial probability Steven and Genesis would be returned to Maria by the next review hearing, and set the 18-month review hearing (§ 366.22) for July 21, 2014. The court also ordered the Department to report on Miguel's progress with respect to Steven and Genesis.

In its filing for the 18-month review hearing as to Steven and Genesis, the Department reported the two children had visited with Maria and their siblings eight times between May 4, 2014 and July 13, 2014, and they told the social worker that they wished to return to Maria's care. Maria was participating in her court-ordered programs but did not appear consistently for weekly drug testing. The Mexican social services agency (DIF) was in the process of assessing Miguel's living circumstances. The Department had provided Miguel with contact information for the children, but Miguel had not communicated with them or with Maria. The Department recommended that, inasmuch as the case had reached the 18-month statutory limit for reunification services, the court terminate services and set the matter for a hearing pursuant to section 366.26.

6

On July 21, 2014 the juvenile court continued the disposition hearing as to Brian and Joseph and the 18-month review hearing as to Steven and Genesis to August 20, 2014.

In a filing submitted on August 20, 2014 the Department stated it had received the DIF assessment, which reported that Miguel was gainfully employed and his home was adequate, well furnished and had ample space. Miguel told DIF he wished to regain custody of all four children, but would respect the decision of Brian and Joseph if they preferred to remain in the United States. Brian and Joseph again told the social worker they did not want to live with Miguel in Mexico.

On August 20, 2014 the juvenile court conducted the disposition hearing as to Brian and Joseph and ordered the two children removed from their parents and suitably placed. The court continued the 18-month review hearing as to Steven and Genesis to October 21, 2014 for a contested hearing and ordered the Department to submit a supplemental report addressing possible placement of Steven and Genesis with Miguel in Mexico.

4. *The 18-month Permanency Review Hearing for Steven and Genesis*

In its supplemental report the Department acknowledged that DIF had concluded Miguel's living situation was adequate and he was ready to care for his children, but determined it was not in the best interests of Steven and Genesis to be released to Miguel. The Department observed that both children stated they had not had any relationship with Miguel since he separated from Maria; he had not provided for their emotional or financial needs; and he had not maintained communication with them or with Maria. The Department added that Steven and Genesis stated they wished to return to Maria's care or, if that was not possible, to live with a maternal aunt in Nevada. On September 20, 2014 the juvenile court ordered the Department to initiate an interstate compact investigation of the maternal aunt.

On October 21, 2014 the Department advised that Maria tested positive for methamphetamine on August 25, 2014. The Department recommended the court

7

terminate family reunification services for Maria and set a hearing pursuant to section 366.26 for Steven and Genesis. On October 21, 2014 the court continued the 18-month review hearing to December 11, 2014.

On December 11, 2014 the Department reported that the maternal aunt's home was not a viable placement option because it did not have adequate space and the aunt lacked the financial means to provide for Steven and Genesis. The Department further stated that Maria had a recent positive test for amphetamine and methamphetamine and had missed four other drug tests.

The 18-month review hearing was held on December 11, 2014.[3] No testimony was taken regarding Steven and Genesis. Counsel for the children requested the court find that return of the children to Miguel would create a substantial risk of detriment to their well-being, emphasizing that Miguel had not made contact with the children in the last four or five years and had not provided for them or sent them any gifts or cards for birthdays or holidays. By contrast, Steven and Genesis had a strong bond with Maria and with their older siblings and were visiting with Maria on a weekly basis. Counsel argued there was no way of knowing when they would ever see Maria or the siblings again if they were sent to Mexico. Counsel further observed the children were United States citizens, they had aspirations of going to college and pursuing a career in this country, and their future would be severely limited if they were sent to Mexico. Counsel for Maria and for the Department joined in the children's request.

Miguel's counsel requested Steven and Genesis be placed in his custody with a home-of-parent order, urging that he was a nonoffending parent, had received a positive assessment from DIF, and was prepared to care for the children. Counsel argued the Department had not met its burden to establish, by a preponderance of the evidence, that

---

[3] The court also conducted the 12-month review for Brian and Joseph. The court terminated reunification services for Maria and ordered Brian and Joseph placed in a planned permanent living arrangement in their current foster home.

the return of the children to Miguel would create a substantial risk of detriment to their well-being. (§ 366.22, subd. (a).)

After hearing argument the court terminated reunification services for Maria, finding she was not in compliance with her case plan and had not made significant progress in resolving the problems that led to the children's dependency status. The court further found that the return of Steven and Genesis to Miguel would be detrimental to the children. The court observed that the four siblings were a bonded group, and it was "clear in watching [Steven and Genesis in the courtroom], especially [Genesis], that [they are] deeply grieved with the possibility of being separated from [Maria] and being separated from [Brian and Joseph]." The court then set the matter for a hearing for the selection and implementation of a permanent plan pursuant to section 366.26.

## CONTENTION

Miguel contends substantial evidence does not support the juvenile court's finding that return of Steven and Genesis to his care would create a substantial risk of detriment to their well-being.

## DISCUSSION

Under the circumstances of this case, the juvenile court was not required to make a finding of detriment to avoid placing Steven and Genesis with Miguel. At the permanency review hearing to be held "within 18 months after the date the child was originally removed from the physical custody of his or her parent or legal guardian," the court is required to return the child to the parent's custody unless it finds such return would create a substantial risk of detriment to the child's well-being. In making its finding, the juvenile court must consider the parent's participation and progress in his or her court-ordered reunification services. (§ 366.22, subd. (a).) Thus, by their terms these provisions of the statute are directed toward a previously custodial parent from whom the child has been removed and who has been receiving reunification services. The statute does not govern placement with a noncustodial parent who has not been receiving reunification services.

9

A separate statute, section 361.2, applies when a noncustodial parent seeks placement of a child who has been removed from the custodial parent.[4] By its terms, section 361.2 applies only at the disposition hearing.

In *In re Zacharia D.* (1993) 6 Cal.4th 435 the Supreme Court confirmed that section 361.2 applies only when the child is first removed from the custodial parent's home: "Nothing in [section 361.2] suggests that custody must be immediately awarded to a noncustodial parent regardless of when in the dependency process the parent comes forward. Rather, its language suggests that the statute is applicable only at the time the child is first removed from the custodial parent or guardian's home. Our interpretation is reinforced by the absence of a similar provision requiring return of the child to a noncustodial parent in the statutes governing the 6-, 12-, and 18-month review hearings." (*In re Zacharia D.,* at pp. 453-454.)[5]

In *In re Zacharia D.* a noncustodial biological father who had never been a party in the dependency proceedings sought custody after the court had terminated reunification services for the child's mother at the 18-month review hearing. The juvenile court conducted an "18-month hearing"[6] for the father and found, pursuant to section 366.22, that the child's return to the father would create a substantial risk of detriment to the child's well-being. The Supreme Court held that neither section 361.2 nor section 366.22

---

4    The statute provides, when a juvenile court removes a child from the custodial parent, and a noncustodial parent requests custody, "the court shall place the child with the [noncustodial] parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).)

5    In *In re Suhey G.* (2013) 221 Cal.App.4th 732 the Court of Appeal carved out an exception, holding that a father was entitled to have his request for custody adjudicated under section 361.2 even though disposition was past, when the father had not received notice of the case until after the disposition hearing. (Cf. *In re Jonathan P.* (2014) 226 Cal.App.4th 1240, 1252-1254.)

6    The term "18-month hearing" was inappropriately used by the juvenile court because reunification services had already been terminated.

applied to the noncustodial father's late request for custody, and construed the father's request for custody as a section 388 petition for change of order[7] in which the father bore the burden to demonstrate that placement with him would be in the child's best interests. (*In re Zacharia D., supra*, 6 Cal.4th at pp. 454-455.)  The court observed that the "substantial risk of detriment" standard of section 366.22 is arguably more stringent than the "best interests of the child" standard of section 388.  (*Id.* at p. 455.)  The court further determined that the juvenile court's finding of substantial risk of detriment under section 366.22 was supported by substantial evidence, indicating the juvenile court would have likewise found under section 388 that it was not in the child's best interests to grant the father custody.  (*Id.* at p. 456.)

As in *Zacharia D.,* although the juvenile court in this case made its determination based on the more stringent detriment standard, the record fully supports a finding that placement with Miguel in Mexico would not be in the best interests of Steven and Genesis.  The two children were born and raised in the United States, are United States citizens, have never stepped foot in Mexico, and speak little Spanish.  They have lived with Brian, Joseph and Maria for almost their entire lives; the four siblings are a bonded group; and, as the court observed at the December 11, 2014 hearing, Steven and Genesis were clearly "deeply grieved with the possibility of being separated" from Maria and the older siblings.  Nor had Steven and Genesis seen Miguel for several years, Miguel had not provided for them in any way, and his telephone contact with them had been sporadic and inconsistent.  And finally, Steven and Genesis stated their educational and career goals and aspirations are based in the United States.  Under these circumstances the

---

[7]    Section 388 entitles the parent of a dependent child, on a showing of change of circumstance or new evidence, to petition the juvenile court for a hearing to change, modify or set aside a previously made order.

11

juvenile court's implied finding that it was not in the best interests of Steven and Genesis to grant custody to Miguel was supported by substantial evidence. [8]

**DISPOSITION**

The petition is denied on the merits.



PERLUSS, P. J.



We concur:



ZELON, J.



FEUER, J. [*]

---

[8]    In his petition for extraordinary writ Miguel acknowledges the distinction between the "best interests" standard and the "risk of detriment" standard and concedes the juvenile court's ruling might be justified under the former.  As we have explained, that is, in fact, the correct, legal standard.

[*]    Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.