Filed 5/14/15  In re Edith E. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re EDITH E. et al., Persons Coming Under the Juvenile Court Law. | B258363 |
| | (Los Angeles County Super. Ct. No. CK83508) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| EDITH Z., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Julie Fox Blackshaw, Judge.  Affirmed.

Valerie N. Lankford, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Melinda A. Green, Deputy County Counsel, for Plaintiff and Respondent.

————————————

Edith Z. (mother) appeals from the trial court's jurisdictional and dispositional findings regarding her two minor children, Edith E. and Isaiah E.  We affirm.

## BACKGROUND

The Los Angeles Department of Children and Family Services (DCFS) filed a petition on June 4, 2014, alleging against Henry E. (father) under Welfare and Institutions Code section 300, subdivisions (a), (b), and (j)[1] that he had physically abused then seven-year-old Edith,[2] engaged in a violent altercation with his female companion, Bertha E., and abused alcohol while Edith and her brother Isaiah, who was five at the time, were under his care and supervision.  This endangered the children.[3]  As to mother, the petition alleged under section 300, subdivisions (b), that she had a history of substance abuse and was a recent user of methamphetamine and marijuana including while the children's half-sibling Gabriela Z. was under her care, rendering her unable to provide regular care of the children, with whom she had failed to reunify due to her substance abuse.  The petition also alleged under subdivisions (d) and (j) that mother allowed the children's half-sibling Gabriela Z. to live in the home of maternal grandmother and her male companion, who had abused mother sexually when she was a minor, which failure to protect also endangered Edith and Isaiah.

The detention report stated that the children had been placed in foster care.  A prior petition filed in August 2010 and sustained in October 2010 stated that mother and her male companion had a history of engaging in violent altercations in which the male companion choked and struck mother, who failed to protect the children; mother had a history of substance abuse and abused marijuana; mother left Edith and Isaiah in the care of unrelated adult females without an appropriate plan for care and supervision; and mother and father engaged in violent altercations in front of the children, resulting in

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] For ease of reference, we use the children's first names only hereafter.

[3] Father is not a party to this appeal, and we therefore detail the allegations against him only as necessary.

Father's arrest and conviction for domestic violence under Penal Code section 273.5, subdivision (a). In August 2011, the court ordered the children placed in the home of father, and ordered in November 2011 that DCFS was to continue to provide mother with reunification services.

Another prior petition in June 2012 alleging that father had a history of alcohol abuse, and was under the influence while caring for the children, had been sustained in July 2012. Father successfully reunified and the children were returned to father's home in February 2013. In February 2014, a family law order granted mother and father joint legal custody, primary residence and sole physical custody to father, and monitored visitation to mother at least three hours per week.

Father told the social worker that mother's last contact with the children was in April 2014, when mother kidnapped the children; after they were returned to him, he obtained a restraining order against mother. Father did not know mother's whereabouts. He denied any abuse of Edith, or of his girlfriend. Father's girlfriend Bertha told the social worker she had been living with him for six months, and he drank excessively, became verbally abusive, and had put his hands around her neck and threatened to choke her. She denied any knowledge that he abused Edith. Edith, who had a red mark below her left eye, told the social worker that father had grabbed her by the hair and pulled her into the house from the outside, pushed her into a table where she banged her spine, and slapped her on the right side of her face and on the top of her head. When Bertha (whom Edith called "mom") came into the living room, father stopped. Father had also hit her once with a belt. Edith was afraid of father and wanted to live with Bertha. Isaiah told the social worker he was in the room when father hit Edith on the face and on the hip. Otherwise, father had not abused him or Edith.

Mother had an open DCFS case regarding her daughter Gabriela Z. from another relationship, born in 2012. Gabriela Z. was in foster care and mother was receiving family reunification services. Mother stated she was complying with court orders in Gabriela Z.'s case to regain custody. She also planned to seek custody of Edith and Isaiah, with whom she had had a monitored visit two weeks earlier.

3

After a hearing on June 4, 2014 at which mother and father were present, Edith and Isaiah were ordered detained. Mother and father received monitored visits for at least three hours per week.

A jurisdiction/disposition report filed July 16, 2014 stated that Isaiah told the social worker he wanted to live with father, but did not call mother his mother because "[he] get[s] confused," and he called Bertha "Mom" instead. He did not want to visit with mother because father said "'she has a lot of boyfriends.'" Isaiah nodded when asked if father had ever hit him with a belt or a hand, but said he did not remember how long ago. Edith told the social worker she did not remember why father had pulled her by the hair into the living room, pushed her into a table, and hit her on the face. She stated that father hit her with a belt once and that he hit Isaiah with a belt on his back and legs when he misbehaved. Edith had seen father drink big cans of beer and wanted him to stop, because "'[h]e doesn't hit [them] when he's not drinking.'" Edith also stated that she had heard father and Bertha argue about mother, saying that she had a lot of boyfriends. Edith had seen father grab Bertha around the neck, but not squeeze; Bertha did not hit her or Isaiah. Edith wanted to live with mother.

Mother told the social worker that she only knew what the children told her, that father had gotten angry at Edith, grabbed her by the hair, and hit her in the face. Edith also told mother that father hits them with his hand and with a belt. Mother stated she had used marijuana and methamphetamine, but had been sober since November 2013. Mother went to jail for fighting with a girl whose phone had been stolen by Gabriela Z.'s father, and admitted leaving Gabriela Z. with her mother and her boyfriend although she knew the boyfriend was a sexual abuser; "'[mother] thought [Gabriela Z.] was safe with [mother's] mom.'" Mother broke up with father because he drank and was abusive. Mother was 26, unemployed, and living on general relief ($300 a month) and food stamps.

Father, 41, denied doing more than grabbing Edith when she ran outside, and said he never abused Bertha. They argued, but that was because mother came over and caused problems. He had stopped drinking when he regained custody of the children.

4

Father said mother was using drugs when he met her and still was using now, and "'that's why she doesn't have her kids.'" They broke up because mother "'uses crystal'" . . . "'[s]he even kidnapped the kids from me and I had to get away from that.'"

The children's monitored visits with mother went well and the children were comfortable with her, although Isaiah initially did not want to visit with mother, saying she had many boyfriends and would leave. Edith was more receptive to mother than to father. Mother stated she had completed parenting classes and was participating in domestic violence and substance abuse classes.

The report recommended that Edith and Isaiah be named dependents and suitably placed. In addition to the physical abuse of Edith when father slapped her and pushed her, he had hit both Edith and Isaiah with a belt on earlier occasions. Father also abused alcohol, and there were multiple prior petitions on that basis. Further, father had physically abused Bertha in the presence of the children.

Placement with mother was not safe, as they had been previously detained due to general neglect and mother had failed to reunify. The petition regarding mother's neglect and failure to protect Gabriela Z., the children's half-sister, had been adjudicated on May 2014. Mother also had an unresolved history of substance abuse that had been the subject of prior petitions. The report recommended that both mother and father be provided family reunification services.

In a last minute information on July 30, 2014, the social worker reported that there were concerns that the foster mother for Edith and Isaiah was allowing mother and father to have unmonitored visitation in exchange for money. DCFS did not recommend unmonitored visits. A social worker had learned that at Edith's last visit with father, he had asked her to write a letter saying that the slap in the face and the rest of the incident was an accident. Edith wanted someone in the room during visits.

Another last minute information on July 31, 2014 informed the court that mother's substance abuse counselor reported that Mother participated and continued to do well, with one session remaining. After that mother would be referred to aftercare for up to a year. Mother had submitted to five drug tests, all negative, and had completed 12 of 12

5

parenting classes. She had not, however, enrolled in individual therapy, obtained a sponsor, or developed a sobriety support, and therefore was not in full compliance with the court ordered disposition. Mother's housing situation continued to change. She had a history of moving from motel to motel, and the social worker had been told that mother recruited for solicitation purposes. Gabriela Z.'s father reported that mother had an Internet web site where she displayed herself for money, and reported that mother was a prostitute, although DCFS had no information regarding mother's source of income. DCFS recommended that mother's visitation continue to be monitored by a DCFS approved monitor.

**Jurisdiction/Disposition hearing**

Mother testified at the July 31, 2014 hearing. She testified she was enrolled in individual counseling and had completed five sessions, telling the therapist that the children got taken away because she went to jail for fighting and her baby got taken away, and she had a drug problem a couple years ago. She did not have a sponsor because she haven't really been looking for one. She did not display herself for money on a website and was not a prostitute. She lived in a room she rented from a friend, and if her children were returned they would stay there temporarily until she got a bigger place. She had been working at Togo's for about a week. Mother denied paying the caretaker to have unmonitored visits or having any unmonitored contact with the children.

On cross-examination, she admitted she did not know whether her counselor was approved by DCFS, and that she took methamphetamine in 2013. In November 2013 when she went to jail for fighting it was because she was a felon on probation. Earlier, her other child's father had stolen a phone, and because the phone was in the car she was driving they both had gone to jail for robbery. The day of the hearing would have been her third day working at Togo's. Her last job before that was in 2009 or 2010 at Quizno's. When the earlier case terminated, she had had visitation with the children once a week, monitored by father. She denied kidnapping the children, saying father had called to ask her to pick up the children because he and his girlfriend were fighting; she believed she had permission. Mother admitted she was violating a monitored visitation

6

order when the children were with her. She explained that she believed it was appropriate for father to monitor her visits even though they had a history of domestic violence.

Counsel for DCFS noted that "this case was closed for a fairly short period of time. When the case was opened previously, there was very little compliance or involvement on the mother's part." The children had been with father for only a short time before "the situation in father's home became toxic again," and counsel asked the court to sustain the allegations against father. As to mother, DCFS asked the court to sustain the allegation under section 300, subdivision (b) that mother's history of substance abuse and her being under the influence in 2014 and 2013 while taking care of the children's half-sister Gabriela Z. endangered the children. Although mother was working toward sobriety and was currently abstaining, she also had a long history of drug use and noncompliance and had not obtained a sponsor. The children's counsel agreed, arguing that mother had a long history of drug use and was just starting therapy, Isaiah was angry with mother, and she had failed to visit for around a year at one point. It was premature to award mother unmonitored visitation.

Mother's counsel argued that her lengthy drug history did not pose a risk, she had been in a substance abuse program for six months with clean drug tests, and was not currently using methamphetamine or marijuana. The petition as to Gabriela Z. was under circumstances that did not exist for Edith and Isaiah, and there was no current risk that the children would suffer the harm alleged as to Gabriela Z. Father's counsel argued that all the counts against father should be dismissed.

The trial court sustained all the counts against father. The court conformed to proof the section 300 subdivision (b) allegation against mother and sustained it as follows: mother "has a history of substance abuse, and is a recent user of methamphetamine and marijuana, which renders the mother unable to provide regular care of the child. On prior occasions in 2014 and 2013, the mother possessed, used, and was under the influence of illicit drugs, while the children's sibling Gabriela [Z.] was in the mother's care and supervision. The children's mother failed to reunify with the

7

children due to the mother's substance abuse. The mother's substance abuse endangers the children's physical health and safety, creates a detrimental home environment, and places the children at risk of physical harm, damage, and danger." Although mother had recently gotten involved in substance abuse programs, the court wanted to see longer participation. "[U]ntil the court has seen that, the court very much feels that there is a current risk." Isaiah's reluctance to live with mother was connected to her lifestyle, and "clearly there is still a nexus and a risk with mother's substance abuse." The court dismissed the other allegations against mother for lack of evidence. The court found jurisdiction over Edith and Isaiah.

Mother's counsel then asked that the children be placed with mother under section 361.2 "given the progress that she's made in her programs." The court responded, "[S]he's offending." Counsel rejoined that the statute did not require that the parent be nonoffending, and asked that the children be released to live with mother in the room she was renting, or in the alternative that mother be allowed short unmonitored visitation, as she was regularly participating in her drug program and had completed a parenting class.

The court declared the children dependents, and found by clear and convincing evidence under section 361, subdivision (c) that there was a substantial danger to the children if they were returned to the custody of the parents, placing them under the supervision of DCFS for suitable placement. "The court does not believe 361.2 is available here. Although the statute does not require a non-offending parent, certainly the case law supports that it's applicable with a non-offending parent. And even if that is not true, the court would certainly find detriment based on the fact that the court just sustained an allegation of substance abuse against the mother." The court ordered reunification services and stated it would consider unmonitored visitation for Mother if she continued to comply with the programs. The court set a six-month hearing for January 15, 2015, telling mother it would reconsider at the six-month hearing and urging her to "[k]eep up the good work." Mother filed this timely appeal.

8

## DISCUSSION

Mother's sole contention on appeal is that the trial court erred in refusing to apply section 361.2, subdivision (a) when it denied mother's request to place Edith and Isaiah with her as the noncustodial parent.

Section 361.2 provides in subdivision (a) that when the court orders removal of a child pursuant to section 361, "the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." The court must state the reasons for its determination "either in writing or on the record." (§ 361.2, subd. (c); *In re Jonathan P.* (2014) 226 Cal.App.4th 1240, 1252–1253.) A ruling that the child should not be placed with a noncustodial parent must be made on the basis of clear and convincing evidence, meaning evidence so clear that it leaves no substantial doubt. (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1426.) On appeal, we review for substantial evidence, "bearing in mind the heightened burden of proof" in the trial court. (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654.)

The trial court in this case sustained against mother the allegation that her history of substance abuse and her recent use of methamphetamine and marijuana (coupled with her limited participation in substance abuse programs) made her unable to provide regular care for the children, stating, "[T]he court very much feels that there is a current risk" due to mother's substance abuse. After declaring Edith and Isaiah dependents and turning to mother's request that the children be placed with her as the noncustodial parent, the court declined to give mother custody: "[T]he court would certainly find detriment based on the fact that the court just sustained an allegation of substance abuse against the mother." These statements are substantial evidence on the record that the court found by clear and convincing evidence ("certainly") that placement with mother would be detrimental, as the court had moments before sustained an allegation of substance abuse making Mother

unfit to care for the children, stating that it "very much feels there is a current risk" of harm.

Mother argues that the trial court erred in refusing to apply section 361.2, subdivision (a) simply because she was an "offending" parent. There is a split of authority whether section 361.2, subdivision (a) applies to both "offending" and "nonoffending" noncustodial parents, with "'nonoffending noncustodial parent' as shorthand for the statutory requirement of a parent 'with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300.'" (*In re John M.* (2013) 217 Cal.App.4th 410, 421–422.) In dicta, we agreed with *In re A.A.* (2012) 203 Cal.App.4th 597, 608, which concluded that an offending noncustodial parent is not entitled to consideration under section 361.2, subdivision (a). (*In re John M.*, *supra*, 217 Cal.App.4th at pp. 423–424.) Other courts have concluded that the plain language of section 361.2, subd. (a) precludes consideration of whether the noncustodial parent is "offending," and any relevant facts may appropriately be considered as part of the detriment determination under that statute. (*In re Nickolas T.* (2013) 217 Cal.App.4th 1492, 1505–1506; *In re D'Anthony D*. (2014) 230 Cal.App.4th 292, 300–303.)

In this case, however, we need not wade back into the debate whether the statute contains a nonoffending requirement. After the trial court initially declined to apply section 361.2, subdivision (a), the court stated that if it were to apply the statute to mother (the noncustodial parent), detriment certainly existed given mother's history of substance abuse and recent use of methamphetamine and marijuana, on which basis it had just sustained an allegation against her, finding a current risk of harm to the children. The record contains sufficient evidence that the court made a finding by clear and convincing evidence of detriment under section 361.2, subdivision (a), rather than merely classifying mother as an "offending" noncustodial parent not entitled to the application of that section.

10

**DISPOSITION**

The orders are affirmed.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


BENDIX, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11