Filed 12/6/22  In re Brannon B. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re BRANNON B. et al, Persons Coming Under the Juvenile Court Law. | B316440 |
| | (Los Angeles County Super. Ct. No. 19CCJP02782A-C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| SADE W. et al., | |
| Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Linda L. Sun, Judge.  Affirmed.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant Sade W.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant Ronald B.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

Sade W. and Ronald B. appeal the November 10, 2021 order terminating parental rights to their children, nine-year-old Brannon B., seven-year-old Alyssa B. and six-year-old Roxanne B., pursuant to Welfare and Institutions Code section 366.26,[1] contending the juvenile court failed to comply with the directives of *In re Caden C.* (2021) 11 Cal.5th 614 and erred in ruling they had failed to establish the beneficial parental relationship exception to termination (§ 366.26, subd. (c)(1)(B)(i)). Sade, the noncustodial parent, also appeals the order, entered earlier the same day, denying her section 388 petition seeking custody of the children and family maintenance services or, in the alternative, additional family reunification services. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Prior History Affecting Custody and Visitation*

In September 2015 the juvenile court sustained a dependency petition pursuant to section 300, subdivision (b)(1), alleging Sade and Ronald had a history of domestic violence with each of them on occasion being the aggressor. Brannon and Alyssa were declared dependents of the court and removed from their parents' custody. Sade and Ronald were ordered to participate in family reunification services, which included drug

_____

[1]     Statutory references are to this code.

2

testing for Sade. Sade gave birth to Roxanne in April 2016, and Sade and Ronald agreed to a voluntary family maintenance case for the infant. In September 2016 the court made a home-of-parents order for Brannon and Alyssa; but the children were removed from Sade and placed with Ronald in April 2017 after Sade failed to participate in court-ordered drug testing. Roxanne was declared a dependent child of the court under section 300, subdivision (j), in June 2017. The following month the court terminated its jurisdiction and awarded Ronald sole physical and legal custody of the children and limited Sade to monitored visitation.

In dissolution proceedings that began while the dependency case was still active, the family court confirmed Ronald's sole physical and legal custody of the children and in June 2018 issued a domestic violence restraining order protecting Ronald and the children from Sade. The five-year restraining order, which prohibited any contact between Sade and Ronald or the children, followed Sade's arrest for assaulting Ronald in the presence of the children.

2. *The Sustained Petition and Disposition Orders*

The children were detained from Ronald in April 2019 following a report of general neglect and placed with the maternal grandfather and step-grandmother. In June 2019 the juvenile court sustained an amended petition pursuant to section 300, subdivision (b)(1), alleging Ronald had displayed mental and emotional problems, including erratic and delusional behavior, which made him unable to provide regular care for the children. The court noted at the hearing that Sade, the noncustodial parent, was nonoffending.

3

Proceeding directly to disposition, the court declared the children dependents of the court, removed them from Ronald's custody and ordered them suitably placed. The court ordered family reunification services for Ronald including mental health counseling and drug testing and required he take all prescribed psychotropic medication. Ronald was allowed monitored visitation. The children remained with their maternal grandparents.

The court asked counsel for Sade whether she was seeking custody of the children. Counsel replied, "Not today, Your Honor." The court approved monitored visitation for Sade, but directed her counsel to file a section 388 petition to modify the restraining order to permit visitation to occur.

3. *The Reunification Period*

On July 22, 2019 the juvenile court granted Sade's request to modify the restraining order and removed the children as protected individuals. The court granted Sade monitored visitation twice a week for two hours each visit conditioned on compliance with her court-ordered case plan, which included a 24-week domestic violence program and individual counseling to address case issues (domestic violence).

On October 31, 2019 Sade filed a section 388 petition requesting the court liberalize her visitation and include in the record that she was seeking custody of the children. The court denied the petition without a hearing, stating Sade failed to allege sufficient new evidence or a change of circumstances.

At the six-month review hearing (§ 366.21, subd. (e)) in January 2020, the court found Sade had made only minimal progress and Ronald had made partial progress in their case plans. The court ordered that family reunification services

4

continue and set the matter for a 12-month review hearing (§ 366.21, subd. (f)). On March 20, 2020 the court ordered suspension of in-person visits due to the COVID-19 pandemic.

In June 2020 Sade gave birth to a baby girl. (The child is not part of this case.) In a status review report for the rescheduled 12-month review hearing on September 10, 2020, the social worker for the Los Angeles County Department of Children and Family Services stated Sade had been reluctant to provide any information about the child's father, Sade's live-in boyfriend, Vincent C. In a last minute information report for the hearing, the social worker advised the court there was an open child welfare referral being investigated in Nevada County, where Sade lived, alleging general neglect involving Sade and the newborn child.

At the 12-month review hearing the court found Sade in partial compliance and Ronald in minimal compliance with their case plans, ordered that family reunification services continue, and set the matter for an 18-month review hearing (§ 366.22).

The Department's March 2021 report for the section 366.22 hearing stated Sade had completed her domestic violence course, but had not satisfactorily participated in therapy. According to the report, her therapist recommended that Sade reenroll "to address[] her unresolved issues" and had informed the social worker "he believe[d] that if mother does not re-enroll in therapy if things do not work out in mother's current relationship mother will repeat the same actions as she did with father." In addition, "he does not recommend that the children return home until mother addresses her unresolved issues."

Sade was arrested for an incident of domestic violence involving Vincent in mid-April 2021. Responding police officers

determined Sade was the aggressor and had injured Vincent, who was granted an emergency protective order. The Department's April 28, 2021 last minute information report also indicated there had been a prior domestic violence incident involving Sade and Vincent in January 2021.

Also in late April 2021 Sade's therapist wrote the Department's social worker to explain his earlier comments regarding Sade's participation in therapy. As he had previously stated, Sade had decided to end therapy with him. However, in reviewing his prior correspondence with the Department, he realized the court had not required any particular number of sessions and the purpose was simply "to 'address the issues.'" Accordingly, given Sade's understanding of the terms of her therapy, "she fulfilled them." He added, "I believe we might have been able to 'fine tune' the material discussed in sessions but with some reflection, I can see that she might have felt she completed what had been asked of her."

At the April 29, 2021 section 366.22 hearing the court found by clear and convincing evidence that return of the children to the physical custody of the parents would create a substantial risk of detriment to them. The court also found Sade and Ronald had made only partial progress toward alleviating the causes necessitating placement of the children and terminated reunification services for both of them. The court scheduled a selection and implementation hearing (§ 366.26) for August 26, 2021. Neither Sade nor Ronald sought writ review of the court's findings and orders. (See Cal. Rules of Court, rules 8.450, 8.452.)[2]

---

[2] References to rules are to the California Rules of Court.

6

4. *The November 10, 2021 Hearings*

In its report for the section 366.26 hearing, filed July 22, 2021, the Department recommended termination of Sade's and Ronald's parental rights and stated the maternal grandparents were willing to adopt all three children and had been approved for adoption. The children told the social worker they loved living with the grandparents, and the social worker observed the children to be happy and comfortable in the home and the grandparents to be affectionate and loving toward the children. The report continued, "The prospective adoptive parents [the maternal grandparents] are meeting the children's diverse needs and facilitating medical, developmental, mental health, while providing adequate supervision. . . . [They] are strong advocates for the children and are committed to providing a permanent home."

Sade filed a new section 388 petition shortly before August 26, 2021. Her petition requested custody of the children with family maintenance services or, alternatively, increased and unmonitored visitation. The petition attached a dozen exhibits (designated A through L) in support of her allegation of changed circumstances.

The court continued the section 366.26 hearing to November 10, 2021 for a contested hearing, set Sade's section 388 petition for a hearing on the same day, and ordered the Department to file a response to the petition by October 27, 2021.[3] The Department's 25-page response (plus attachments)

---

[3]     At the hearing on August 26, 2021 the court indicated it had not yet seen the section 388 petition, which, according to Sade's counsel, had been filed two days earlier. On September 3, 2021 the court set a hearing for September 10, 2021 to determine

7

expressed "great concern for the mother's ability to exercise new skills and or abilities to refrain from engaging in domestic violence," notwithstanding her completion of a 26-week domestic violence course. The Department also described the somewhat uncertain nature of Sade's participation in, and purported completion of, court-ordered individual therapy.

a. *The section 388 hearing*

At the section 388 hearing on November 10, 2021, the court admitted into evidence without objection Sade's petition with exhibits and the Department's October 27, 2021 response, as well as the Department's July 22, 2021 section 366.26 report. Sade's counsel did not ask that Sade testify or seek to introduce any additional evidence, requesting only the opportunity to present argument. At the outset of her argument counsel noted that Sade was nonoffending and then advised the court, "We are, at the very least, asking that the court order for reunification services to be resumed for another six months, or reinstated, since it's been terminated." Counsel did not address the petition's request for an immediate return of custody of the children to Sade.

Counsel for the Department, joined by minors' counsel, argued Sade had not made a sufficient showing of a change of circumstances to justify granting section 388 relief. The Department also pointed out Sade was apparently no longer seeking custody and had made no showing that granting

_____

whether it should grant or deny an evidentiary hearing on the section 388 petition. On September 10, 2021 the court ordered a hearing on the petition, confirmed the previously ordered November 10, 2021 hearing date, and again ordered the Department to prepare a response by October 27, 2021.

additional reunification services would be in the children's best interest.

The court denied the petition, noting it had "considered all the evidence in this matter and counsel's arguments" and found Sade "did not meet her burden, not even the prima facie burden, to have the court sustain the 388 petition." First, the court ruled, Sade had not demonstrated her circumstances had changed, observing that her April 2021 arrest for domestic violence showed she had not learned how to apply skills addressed in her domestic violence classes.[4] In addition, the court noted, Sade's therapist had expressed concern that there were unresolved issues that might resurface if Sade did not resume individual counseling. Second, the court found Sade had failed to establish that granting further reunification services would be in the best interests of the children. During Sade's in-person visits the two older children, although happy to see her, were allowed to misbehave because Sade did not set boundaries and then made no effort to correct them. Consistent with the arguments of counsel, the court did not address the request made in Sade's petition for an immediate return of the children to her custody.

b. *The section 366.26 hearing*

The section 366.26 hearing on the Department's recommendation to terminate parental rights began immediately after the hearing on Sade's section 388 petition. Sade testified she had regularly seen the children every other weekend for two years, either flying or driving down from her home in Nevada City. If a visit needed to be cancelled (because a child was ill or

---

[4] The court recognized that criminal charges had been dropped, but stated that did not negate the fact that the incident of domestic violence had occurred.

9

due to Sade's transportation problems), she would communicate directly with the maternal grandfather or the social worker. Sade described the children as excited to see her at the visits, which lasted from three to five hours. Asked if the children showed her physical affection, Sade responded, "Absolutely. . . . Our bond is incredibly strong. We talk three times a week. . . We're always happy to see each other, whether it's in phone or in person. We can't get enough time together." Sade explained she and the maternal grandfather did not have a good relationship; he did not invite her to participate in the children's medical appointments; and she did not ask if she could do so because she knew he would not allow any contact that was not ordered by the court or authorized by the social worker.

Minors' counsel, who acknowledged that Sade had visited consistently with the children, argued Sade had not shown a sufficient bond with the children to establish an exception to the preference for adoption and urged the court to terminate parental rights. Her visits, he observed, focused only on having fun with the children; and he emphasized that Sade had testified the children did not cry or otherwise express any emotional upset when her visits ended, a point also made by the Department.

Sade's counsel argued termination would be detrimental to the children "because of the parent-child bond exception." Responding to minors' counsel's just-having-fun comment, she argued that, given the limited time Sade had for visits, having fun with her children was a necessary part of developing an emotional attachment. Counsel then argued, "Balancing the parents' interest in reunification with the child's need for stability and permanency, right now the kids do have—they are—they have stability with the foster parent." Because of

Sade's strong interest in reunifying with the children, she concluded, the court should "allow[] a little more time in approaching this."

For his part, Ronald's counsel, while generally opposing the Department's recommendation to terminate parental rights, did not argue the parental relationship exception applied to his client. Rather, without explaining his rationale, he urged the court to have the Department investigate whether legal guardianship would be a more appropriate plan. Counsel then asked the court, if it adopted the Department's recommendation, to order the Department to refer the matter for development of a post-adoption visitation agreement to permit Ronald to continue to see the children if he sought and received proper mental health treatment.

The court found by clear and convincing evidence that Brannon, Alyssa and Roxanne were adoptable and no exception to adoption applied; terminated Sade's and Ronald's parental rights; transferred care custody and control of the children to the Department for adoptive planning and placement; and designated the children's current caregivers (the maternal grandparents) as prospective adoptive parents. With respect to the parental relationship exception to termination, the court found that none of the three elements had been met.

The court briefly discussed the quality of Ronald's monitored, virtual or telephone visits with the children, noting he had frequently displayed aggressive and inappropriate behavior leading to termination of the visits, but did not otherwise address the parental relationship exception as it applied to him.

As to Sade, although the court recognized she had regular in-person visits with the children, the court found her phone or

video visits during recent months had not been consistent. Even with those visits, the court continued, Sade had not proved the children would benefit from the continuation of the relationship: "The mere fact [of] the mother's loving and frequent relationship is not enough to overcome the need for stability for the children." The court noted the children had been with the maternal grandparents for two years (since 2019) and had been out of Sade's custody for four years because Ronald had sole custody between 2017 and 2019. In addition, the court pointed out, while Brannon and Alyssa said they enjoyed visiting with Sade because she brought fun things to play with, the children and the grandparents all indicated Sade was unable to set boundaries and had no rules for the visits. And, as had counsel for the children and the Department, the court emphasized that the children did not show any emotional upset when visits with Sade ended.

## DISCUSSION

1. *The Juvenile Court Did Not Commit Legal Error or Abuse Its Discretion in Denying Sade's Section 388 Petition*

    a. *Governing law and standard of review*

Section 388 provides for modification of juvenile court orders when the moving party (1) presents new evidence or a change of circumstance and (2) demonstrates modification of the previous order is in the child's best interest. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415; *In re Stephanie M.* (1994) 7 Cal.4th 295, 317; *In re Y.M.* (2012) 207 Cal.App.4th 892, 919; see rule 5.570(e); see also *In re Zacharia D.* (1993) 6 Cal.4th 435, 455 ["'[s]ection 388 provides the "escape mechanism" that . . . must be

built into the process to allow the court to consider new information"'].)

When, as here, a section 388 petition is filed after family reunification services have been terminated, the juvenile court's overriding concern is the child's best interest. (*In re Stephanie M., supra,* 7 Cal.4th at p. 317.) The parent's interests in the care, custody and companionship of the child are no longer paramount; and the focus shifts to the needs of the child for permanency and stability. (*Ibid.; In re Malick T.* (2022) 73 Cal.App.5th 1109, 1123.) Nonetheless, a parent may rebut the presumption that, once family reunification services have been terminated, reunification is not in the best interest of the child by showing that circumstances have changed and that the best interest of the child warrants further reunification services. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309; *In re Stephanie M.,* at p. 317.)

"[B]est interests is a complex idea" that requires consideration of a variety of factors. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 530; see *In re Jacob P.* (2007) 157 Cal.App.4th 819, 832-833.) In determining whether a section 388 petitioner has made the requisite showing, the juvenile court may consider the entire factual and procedural history of the case, including factors such as the seriousness of the reason leading to the child's removal, the reason the problem was not resolved, the passage of time since the child's removal, the relative strength of the bonds with the child, the nature of the change of circumstance, and the reason the change was not made sooner. (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 616; *In re Aaliyah R.* (2006) 136 Cal.App.4th 437, 446-447; *In re Justice P.* (2004) 123 Cal.App.4th 181, 188-189.)

If the juvenile court has ruled the parent failed to carry his or her initial burden to demonstrate new evidence or changed circumstances, the first step of the analysis, the question for the reviewing court is whether that finding is erroneous as a matter of law. (See *Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 769 [where the issue on appeal turns on a failure of proof at trial, "the question for the reviewing court [becomes] "'whether the evidence compels a finding in favor of the appellant as a matter of law'"]; *In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1156 [same].) We review the court's decision to grant or deny a section 388 petition based on its best interest finding for abuse of discretion and may disturb the exercise of that discretion only in the rare case when the court has made an arbitrary or irrational determination. (*In re Stephanie M., supra*, 7 Cal.4th at pp. 318-319; *In re Malick T., supra,* 73 Cal.App.5th at p. 1123; *In re I.B.* (2020) 53 Cal.App.5th 133, 153.) We do not inquire whether substantial evidence supports the order, nor do we reweigh the evidence and substitute our judgment for that of the juvenile court. (*In re Stephanie M.*, at pp. 318-319.) We ask only whether the juvenile court abused its discretion with respect to the order it actually made. (*In re M.H.* (2018) 21 Cal.App.5th 1296, 1305.)

      b. *The juvenile court did not commit legal error in failing to find it would be detrimental to the children to return custody to Sade*

Sade does not argue on appeal that the court abused its discretion in denying her request for additional reunification services—the only issue addressed by her counsel at the hearing on her section 388 petition—or in finding more generally that she had not established the children's best interests would be furthered by the modifications requested in her petition. Rather,

focusing solely on the petition's request for an immediate return of the children to her custody, she contends the court did not conduct a proper hearing or apply the correct legal standard.

The foundation for Sade's argument is rule 5.570(h)(2), which provides the section 388 hearing "must be conducted as a dispositional hearing under rules 5.690 and 5.695 if: [¶] . . . [¶] (B) There is a due process right to confront and cross-examine witnesses. [¶] Otherwise, proof may be by declaration and other documentary evidence, or by testimony, or both, at the discretion of the court." According to Sade, because she was a nonoffending noncustodial parent, the court was required, as it would be at a disposition hearing pursuant to section 361.2, subdivision (a), to place the children with her unless it found by clear and convincing evidence it would be detrimental to the children to do so. It was legal error, Sade contends, for the court to instead apply the best interests standard to deny her petition.[5]

---

[5] Because the court stated Sade had not even met her prima facie burden under section 388, Sade argues the court failed to consider any evidence, denying the petition based solely on her pleading, which, she asserts, violated the requirement that the hearing be conducted as a disposition hearing. Even a cursory reading of the court's ruling belies that contention. As discussed, the court admitted into evidence not only Sade's petition, which included Sade's declaration and multiple exhibits, but also the section 388 and 366.26 reports, offered the parties an opportunity to present additional evidence and listened to oral argument. The court then expressly stated it had considered the evidence (and argument) and found Sade had not carried her burden to demonstrate the elements necessary for section 388 relief. That is the manner in which many (if not most) disposition hearings are conducted. The additional reference to Sade's prima facie burden was nothing more than a grace note.

Even if not forfeited because it was not raised in the juvenile court (see *In re S.B.* (2004) 32 Cal.4th 1287, 1293 [forfeiture doctrine applies in dependency proceedings]; *In re Elijah V.* (2005) 127 Cal.App.4th 576, 582 ["[a] parent's failure to raise an issue in the juvenile court prevents him or her from presenting the issue to the appellate court"]; see also *In re Wilford J.* (2005) 131 Cal.App.4th 742, 754]), Sade's argument the court applied the wrong legal standard is unpersuasive.

By its terms section 361.2 generally applies only at the disposition hearing when a child is first formally removed from the care of the custodial parent. (*In re Zacharia D., supra,* 6 Cal.4th at p. 453 ["Nothing in this statute suggests that custody must be immediately awarded to a noncustodial parent regardless of when in the dependency process the parent comes forward. Rather, its language suggests that the statute is applicable only at the time the child is first removed from the custodial parent or guardian's home"]; *In re Z.K.* (2011) 201 Cal.App.4th 51, 70 ["[s]ection 361.2 is designed to apply at the disposition phase of the dependency proceeding, when the court first elects to remove the child from the custody of the custodial parent"].) Nonetheless, courts have on occasion applied the principles of section 361.2 postdisposition to avoid prejudice to a noncustodial nonoffending parent who did not know about the dependency proceeding until after the disposition hearing or who did not request custody until after the disposition hearing in order to establish presumed father status. (See, e.g., *In re Liam L.* (2015) 240 Cal.App.4th 1068, 1083 [father appeared before disposition hearing and requested custody after disposition hearing to establish presumed father status and develop a relationship with the child]; *In re Jonathan P.* (2014)

16

226 Cal.App.4th 1240, 1255-1256 [social services agency failed to adequately search for the parent]; *In re Suhey G.* (2013) 221 Cal.App.4th 732, 744-745 [agency failed "to properly serve [the parent,] depriv[ing] him of the opportunity to appear at the disposition hearing and obtain custody under the section 361.2 framework"].)

In *In re Liam L., supra,* 240 Cal.App.4th 1068 the court of appeal held in these situations, when a noncustodial parent seeks a postdisposition change in a child's placement by means of a section 388 petition, the general best interests test does not apply: "[G]iven the underlying presumption in California's dependency scheme that a minor should be placed with a noncustodial parent, absent a finding of detriment, such a placement is inherently in the minor's best interests." (*Id.* at p. 1073, fn. omitted.) Therefore, "[a] noncustodial parent . . . makes a prima facie case of best interests[] under section 388, when the noncustodial parent requests custody of the dependent child postdisposition. This minimal burden reflects the noncustodial parent's constitutional right to care and custody of the child and the law's presumption that the child should be placed with his or her parents whenever possible. A court considering the noncustodial parent's [section 388] petition must place the child with the noncustodial parent unless the opposing party establishes that the placement would be detrimental to the child's safety, protection, or physical or emotional well-being." (*Id.* at pp. 1085-1086.)

The *Liam L.* court, however, explained that in this context "a finding of detriment is equivalent to a finding that placing the dependent child with the noncustodial parent is not in the child's

17

best interests" (*In re Liam L.*, *supra*, 240 Cal.App.4th at p. 1086)[6] and expressly stated it was not holding the presumption that placement with the noncustodial parent would be in the minors' best interests applied "if the noncustodial parent participates in reunification services, the parent fails to make substantial progress, the court terminates those services, and the court sets a selection and implementation hearing under section 366.26." (*Ibid.*) That is precisely the circumstance here. Sade through counsel advised the court she was not seeking custody at the disposition hearing (because there was still in place a no-contact domestic violence restraining order); she subsequently participated in, and failed to satisfactorily complete, her court-ordered case plan; and the court terminated reunification services and scheduled the selection and implementation hearing.

Moreover, at the six-month review hearing on January 6, 2020, the 12-month review hearing on September 10, 2020, and the 18-month review hearing on April 29, 2021 the court found by clear and convincing evidence that returning custody of the children to their parents would create a substantial risk of detriment to them, fully rebutting any presumption it would be in the children's best interests to be placed with Sade. Given those findings, it was Sade's burden under section 388 to present evidence of a substantial change in circumstance justifying a

---

[6] The difference, therefore, between a typical section 388 hearing and the one envisioned by the *Liam L.* court is not in the nature of the required finding, but whether the petitioner has the burden of proving by a preponderance of the evidence that modifying custody is in the best interest of the child or the party opposing the petition has the burden of proving by clear and convincing evidence it is not.

18

modification of the prior rulings and that, notwithstanding repeated instances of domestic violence, it was in the children's best interests to be returned to her custody. She did not.

Finally, in addition to the findings of detriment at the three review hearings, at the selection and implementation hearing held immediately after the section 388 hearing, the court once again found by clear and convincing evidence that it would be detrimental to the children to be returned to their parents. Any possible error in failing to make that finding a few minutes earlier was necessarily harmless.

Sade's argument the juvenile court committed reversible error by failing to state on the record the factual basis for its order, as required by rule 5.695(a)(7) for decisions regarding custody made at a disposition hearing, is similarly flawed. As discussed, the court explained in detail why it was denying Sade's request for additional reunification services. The court reasonably understood from counsel's argument at the hearing that Sade was no longer pursuing her request for an immediate return of custody and that no express findings as to that issue were required.

    2. *The Juvenile Court Did Not Abuse Its Discretion in Finding the Beneficial Parental Relationship Exception to Termination of Parental Rights Did Not Apply*

     a. *Governing law and standard of review*

The express purpose of a section 366.26 hearing is "to provide stable, permanent homes" for dependent children. (§ 366.26, subd. (b).) Once the court has decided to end parent-child reunification services, the legislative preference is for adoption. (§ 366.26, subd. (b)(1); *In re S.B.* (2009) 46 Cal.4th 529, 532 ["[i]f adoption is likely, the court is required to terminate

19

parental rights, unless specified circumstances compel a finding that termination would be detrimental to the child"].)

Section 366.26 requires the juvenile court to conduct a two-part inquiry at the selection and implementation hearing. First, it determines whether there is clear and convincing evidence the child is likely to be adopted within a reasonable time. (*In re Caden C., supra,* 11 Cal.5th at p. 630; *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 249-250; *In re J.W.* (2018) 26 Cal.App.5th 263, 266.) Then, if the court finds by clear and convincing evidence the child is likely to be adopted, the statute mandates judicial termination of parental rights unless the parent opposing termination can demonstrate one of the enumerated statutory exceptions applies. (§ 366.26, subd. (c)(1)(A) & (B); see *In re Caden C.,* at p. 630; *In re B.D.* (2021) 66 Cal.App.5th 1218, 1224-1225.)

One of the statutory exceptions to termination is set forth in section 366.26, subdivision (c)(1)(B)(i), which permits the court to order a permanent plan other than adoption if "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." As the Supreme Court explained in *In re Caden C., supra,* 11 Cal.5th 614, the exception requires the parent to establish, by a preponderance of the evidence, (1) the parent has maintained regular visitation and contact with the child, "taking into account the extent of visitation permitted"; (2) the child has a substantial, positive, emotional attachment to the parent such that the child would benefit from continuing the relationship; and (3) terminating the relationship "would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home." (*Id.* at p. 636; see *id.* at p. 630 ["[t]he

language of this exception, along with its history and place in the larger dependency scheme, show that the exception applies in situations where a child cannot be in a parent's custody but where severing the child's relationship with the parent, even when balanced against the benefits of a new adoptive home, would be harmful for the child"].)

When the benefits of a stable, adoptive, permanent home outweigh the harm the child would experience from the loss of a continued parent-child relationship, the court should order adoption. (*In re Caden C.*, *supra*, 11 Cal.5th at p. 634.) However, "'[i]f severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that,' even considering the benefits of a new adoptive home, termination would 'harm[]' the child, the court should not terminate parental rights." (*Id.* at p. 633.)

We review the juvenile court's findings as to whether the parent has maintained regular visitation and contact with the child and the existence of a beneficial parental relationship for substantial evidence. (*In re Caden C.*, *supra*, 11 Cal.5th at pp. 639-640; *In re A.L.* (2022) 73 Cal.App.5th 1131, 1154.) We review the third step—whether termination of parental rights would be detrimental to the child due to the child's relationship with his or her parent—for abuse of discretion. (*In re Caden C.*, at p. 640.)

> b. *The finding that termination of Sade's parental rights would not be detrimental to the children was well within the juvenile court's discretion*

As explained in *In re Caden C.*, *supra*, 11 Cal.5th 614, the section 366.26, subdivision (c)(1)(B)(i), exception to termination of parental rights is primarily intended to allow a child to continue

to benefit from a positive relationship with his or her parent in situations where that parent is unable to regain custody of the child. (See *id.* at p. 630.) It is not an alternative method for seeking additional reunification services after a failed section 388 petition. Yet, as discussed, at the section 366.26 hearing Sade's counsel asked the court to balance Sade's interest in reunification, not the children's interest in maintaining their relationship with her, against the children's need for stability and permanency. Having failed to even assert that the nature of the children's relationship with Sade outweighed the benefits of stability and permanence through adoption by their grandparents, let alone to identify evidence in the record to support such a conclusion, it would be difficult for us to hold the juvenile court erred in ruling Sade failed to establish the exception applied.

Notwithstanding counsel's faulty approach to the issue, however, the juvenile court expressly considered each of the three elements of the parental relationship exception as discussed in *In re Caden C.*, *supra,* 11 Cal.5th 614, and found Sade had failed to satisfy any of them. There was no reversible error.

As to the first element, regular visitation and contact, although the court acknowledged Sade had regular in-person visits, it found, based on the Department's reports, that her remote (telephonic or video) visitation had been inconsistent. The court thus concluded Sade failed to establish this essential element of the parental relationship exception.

On appeal Sade contends the evidence supported the contrary finding and notes that minors' counsel agreed Sade's visitation had been regular. Sade misconstrues the substantial

22

evidence standard of review: The issue is not whether the court could have found in Sade's favor on this element, but whether the finding actually made lacked evidentiary support. It did not. (See *In re Caden C.*, *supra*, 11 Cal.5th at p. 640 ["In reviewing factual determinations for substantial evidence, a reviewing court should 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.' [Citation.] The determinations should 'be upheld if . . . supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence'"]; cf. *In re R.V.* (2015) 61 Cal.4th 181, 200-201 ["[t]here is, however, no single formulation of the substantial evidence test for all its applications"; where a party fails to meet its burden on an issue in the juvenile court, "the inquiry on appeal is whether the weight and character of the evidence . . . was such that the juvenile court could not reasonably reject it"].)

As stated in the most recent status review report before the court, filed October 15, 2021, "During this period of supervision, mother has been inconsistent with telephone visits with the children and consistent with in person visits. Mother has stated she is either tired or has an engagement that conflicts with telephone visits. The CSW has attempted to address the inconsistent phone calls however, mother is either unwilling or unable to speak with the CSW." That information was sufficient to support the court's conclusion Sade's visitation had not been consistent, even taking into account the limitations imposed on Sade by court orders. (See *In re Caden C.*, *supra*, 11 Cal.4th at p. 632; *In re Eli B.* (2022) 73 Cal.App.5th 1061, 1070-1071 [substantial evidence supported finding that parent did not

23

regularly visit child; although "he had visited regularly 'for the most part' for two years," his visitation was often "sporadic and also entailed significant gaps"].)

The second element of the parental relationship exception has two components: The child has a positive emotional attachment to the parent, and the child would benefit from continuing the relationship. (See *Caden C., supra*, 11 Cal.5th at p. 636.) The evidence here indicated Brannon and Alyssa, the two older children, had fun and enjoyed their visits with Sade. But both children also said Sade did not have any rules during visits, and Brannon confirmed reports that he did not listen to Sade. Moreover, although happy to see Sade, none of the children reacted negatively (that is, displayed emotional upset) when the visits ended. When evaluating this limited evidence in terms of the strength of the attachment between Sade and the children and the benefit of continuing their relationship, the court properly considered the age of the children (at this point, Brannon was eight years old, Alyssa six and Roxanne five) and the fact they had not lived with Sade for four years—the majority of their lives. (See *id*.at p. 632.) Weighing these factors the court concluded, on balance, the record did not establish the type of substantial beneficial emotional attachment necessary for of the parental relationship exception to apply. On appeal Sade again argues the record supported a finding that the children shared such a relationship with her, but she fails to demonstrate, as is her burden, that there was not substantial evidence for the juvenile court's contrary conclusion.

Finally, even if we were to accept Sade's arguments that she proved consistent visitation and the children's substantial, positive emotional attachment to her, the record is devoid of

evidence that would justify the exceptional conclusion that maintaining a relationship with Sade outweighed the benefits of stability and permanence through adoption by the children's grandparents. (See *In re Caden C.*, *supra*, 11 Cal.5th at p. 631 ["'[t]he statutory exceptions merely permit the court, in exceptional circumstances [citation], to choose an option other than the norm, which remains adoption'"]; accord, *In re Celine R.* (2003) 31 Cal.4th 45, 53.) Other than repeating that the children were happy to see Sade and asserting without supporting evidence that they "will be devastated when they are not longer permitted to see their mother,"[7] Sade has presented nothing that suggests the court's evaluation of the relative benefits of adoption versus preserving the parental relationship was arbitrary or irrational. To the contrary, given the ample evidence the children were happy and comfortable in the prospective adoptive home and the grandparents, who wanted to provide a permanent home for the children, were nurturing and affectionate toward them, the decision that the parental relationship exception did not apply was well within the juvenile court's discretion.

### c. *Ronald forfeited any claim the beneficial parental relationship exception applied to him*

Although the juvenile court conducted the three-element analysis required by *In re Caden C.*, *supra*, 11 Cal.5th 614 with respect to Sade's contention her bond with the children justified application of the beneficial parental relationship exception to

---

[7] Sade cites her own testimony that she believes the maternal grandfather will not allow her to see the children once they are adopted, but provides no evidence of the impact on the children of such a decision were it to be made.

termination of parental rights, Ronald argues the court erred in failing to make a comparable analysis of his bond with the children.  That omission is not surprising, nor was it error.  It was Ronald's burden to assert the exception applied.  (See *In re Rachel M.* (2003) 113 Cal.App.4th 1289, 1295 ["The juvenile court does not have a sua sponte duty to determine whether an exception to adoption applies.  [Citations.]  The party claiming an exception to adoption has the burden of proof to establish by a preponderance of evidence that the exception applies"]; *In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1252 [same].)  Ronald did not do so, raising only a general objection to adoption at the section 366.26 hearing and requesting the court order the Department to evaluate legal guardianship as the permanent plan for the children.

As the court explained in *In re Erik P.* (2002) 104 Cal.App.4th 395, "The application of any of the exceptions enumerated in section 366.26, subdivision (c)(1) depends entirely on a detailed analysis of the relevant facts by the juvenile court.  [Citations.]  If a parent fails to raise one of the exceptions at the hearing, not only does this deprive the juvenile court of the ability to evaluate the critical facts and make the necessary findings, but it also deprives this court of a sufficient factual record from which to conclude whether the trial court's determination is supported by substantial evidence."  (*Id.* at pp. 402-403.)

Because Ronald failed to raise the beneficial parental relationship exception in the juvenile court, it was not error for the court to address Sade's bond with the children but not Ronald's.  In addition, having failed to raise it in the juvenile court, Ronald has forfeited the issue on appeal.  (*In re Daisy D.*

26

(2006) 144 Cal.App.4th 287, 292; *In re Erik P., supra,* 104 Cal.App.4th at pp. 402-403; see *In re Elijah V., supra,* 127 Cal.App.4th at p. 582.)  Ronald concedes he did not contend in the juvenile court that the exception applied to him but insists there was no forfeiture because a parent is not required to object to the social service agency's failure to carry its burden of proof to preserve the issue for appeal.

While an accurate statement of the law, Ronald's argument is misplaced because it was his burden, not the Department's, to establish the exception applied, as made absolutely clear in *In re Caden C., supra,* 11 Cal.5th at page 636:  "[T]he parent asserting the parental benefit exception must show, by a preponderance of the evidence, three things."  (Accord, *In re B.D., supra,* 66 Cal.App.5th at pp. 1224-1225 ["'[o]nce the court determines the child is likely to be adopted, the burden shifts to the parent to show that termination of parental rights would be detrimental to the child under one of the exceptions listed in section 366.26, subdivision (c)(1)'"].)  Thus, although it is true, as Ronald asserts, a parent who does not challenge a finding of adoptability may argue on appeal that substantial evidence does not support such a finding (see, e.g., *In re Gregory A.* (2005) 126 Cal.App.4th 1554, 1560-1561 [because the social services agency has the burden of proof of adoptability, a parent is not required to object to the lack of substantial evidence in order to preserve the issue for appeal]), a parent who did not assert the parental relationship exception in the juvenile court has no right to do so on appeal.  (*In re Rachel M., supra,* 113 Cal.App.4th at p. 1295; *In re Erik P., supra,* 104 Cal.App.4th at p. 403.)

27

## DISPOSITION

The juvenile court's November 10, 2021 orders denying Sade's section 388 petition and terminating parental rights are affirmed.

PERLUSS, P. J.

We concur:

SEGAL, J.

FEUER, J.